**Johnathan David SPARKS, Covenant Building and Developing, Inc., d/b/a Covenant Builders, Sparks Heritage Homes, Inc., and John L. Sparks, Appellants.**

v.

**Randel P. BOOTH and Cynthia A. Booth, Appellees.**

No. 05–06–00687–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 2007.

Elliott L. Wood, Elliott L. Woods, P.C., Carrollton, J. Scott Bardole, Brown & Carls L.L.P., Austin, TX, for Appellant.

George Alexander, Harold F. Curtis, Curtis, Alexander, McCambell .& Morris, P.C., Greenville, TX, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and LANG.

### OPINION

Opinion by Justice LANG.

Johnathan David Sparks,[1] Sparks Heritage Homes, Inc., and John L. Sparks appeal the portion of the trial court's judgment finding them jointly and severally liable for damages in the amount of $219,121 and additional damages pursuant to the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA) in the amount of $498,242. Covenant Building and Developing, Inc., d/b/a Covenant Builders appeals the portion of the trial court's judgment granting its motion for directed verdict.

Johnathan Sparks, Covenant Builders, Sparks Heritage Homes, and John Sparks raise seven issues on appeal, as follows:

(1) Johnathan Sparks, Sparks Heritage Homes, and John Sparks argue the evidence is legally insufficient because the expert testimony does not support the Boothes' claim for damages; (2) Johnathan Sparks argues the evidence is legally insufficient because there was no evidence to prove his actions were the producing cause of the Boothes' damages; (3) Johnathan Sparks, Sparks Heritage Homes, and John Sparks argue they conclusively proved their affirmative defense of constructive knowledge; (4) John Sparks argues the evidence is legally insufficient because there was no evidence to prove he was the alter ego of Sparks Heritage Homes; (5) John Sparks argues the trial court did not have jurisdiction over the Boothes's claim that he was the alter ego of Sparks Heritage Homes; (6) Covenant Builders argues the trial court erred when it failed to award it court costs after granting its motion for directed verdict; and (7) Johnathan Sparks, Sparks Heritage Homes, and John Sparks argue the trial court erred when it unconditionally granted the Boothes attorney's fees on appeal.

We conclude John Sparks failed to preserve for appeal his claim that the trial court should not have determined the Boothes' claim of alter ego. As to Covenant Builders's contention it should have received court costs, we conclude the trial court abused its discretion when it failed to assess court costs for the portion of the judgment granting Covenant Builders's motion for directed verdict. The Boothes concede the judgment should not have awarded them unconditional attorney's fees on appeal. In all other respects, we conclude the evidence is legally sufficient to support the trial court's judgment.

---

1. We note that the record and pleadings contain two different spellings of Johnathan Sparks's first name: (1) Johnathan; and (2) Jonathan. Johnathan Sparks somewhat consistently uses the first spelling. Accordingly, we use that spelling throughout this opinion.

The trial court's judgment is reversed, in part, and remanded for further proceedings regarding the assessment of court costs between Covenant Builders and the Boothes. The judgment is modified to reflect that the award of attorney's fees on appeal is conditioned on a successful appeal. As modified, the remaining portion of the judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Boothes and their children planned to move from Ohio to Greenville, Texas when Randel Booth was transferred by his employer. Because they were unable to find a house that met their requirements for the children's school and their horses, the Boothes purchased two, eleven-acre parcels of property in Caddo Mills, Texas, and planned to build a house. The Boothes wanted to be relocated in the house before school started.

In March 2002, in advance of moving to Texas, the Boothes went to a model house located on I–30 to obtain information about building a house. The model house was the place of business for both Sparks Heritage Homes and Covenant Builders. Sparks Heritage Homes was operated by John Sparks. Covenant Builders was operated by his son, Johnathan Sparks. Inside the model home was a board that had the names "John" and "Johnathan" on it with customers' names listed beneath each name. When a prospective home owner came into the Sparkses' office, the Sparks alternated, depending on the geographical area where the house was to be built, as to which of them would secure the contract to build the house. When the Boothes arrived, the receptionist, Damaris Lawson, scheduled an appointment for the Boothes to meet later with Johnathan Sparks because it was "his turn." When the Boothes returned, they met with Johna-than Sparks, who gave them business cards for Covenant Builders. During their meeting, Johnathan Sparks told the Boothes they could choose one of the model homes pictured on the wall or design their own home using the services of an architect for a design fee of $2,500. At that meeting, Cynthia Booth told Johna-than Sparks what she had in mind with regard to the interior floor plan and he created a computer-generated design that had "Covenant Builders" printed at the top. They went over the computer-generated design and Johnathan Sparks made hand-written notations on it. He told Cynthia Booth he would submit the computer-generated design to the architect who would prepare the plans for the house. The exterior design of the home was going to be left entirely to the architect. Cynthia Booth wrote a check made payable to Sparks Heritage Homes for $2,500 and Johnathan Sparks gave them a receipt from Sparks Heritage Homes because, at that time, Covenant Builders did not have a bank account.

A dispute arose between John Sparks and Johnathan Sparks because when the Boothes came into the office it was Johna-than Sparks's turn to take the customer, but the Boothes wanted a house built in the geographical area set aside for John Sparks. Ultimately, it was decided that John Sparks through Sparks Heritage Homes would build the Boothes' house. John Sparks told Lawson to change the contract she had prepared for the Boothes' house from Covenant Builders to Sparks Heritage Homes.

The next day, the Boothes signed the contract to build the house for $234,180. They noticed the contract was with Sparks Heritage Homes, not Covenant Builders. Johnathan Sparks and John Sparks explained that they conducted business out of the same office, all legal documents

were done through Sparks Heritage Homes, and John Sparks was the "primary" who signed the contracts. However, the Boothes still believed Johnathan Sparks was going to build their home.

On the day of closing, John Sparks went to the title company and told Randel Booth that he was going to build their house because Johnathan Sparks decided he did not want to build it. From that point on, all the Boothes' transactions were conducted with John Sparks.

The Boothes met with John Sparks and Johnathan Sparks to go over the "architectural drawing." There were a few inaccuracies so the Sparks indicated they would send the drawings back to the architect. John Sparks attempted to build the Boothes' house from the corrected "architectural drawing."

In May 2002, while Cynthia Booth and the children were still residing in Ohio, Randel Booth returned to Ohio and brought his wife photographs of the house. She noticed there was "something that wasn't right about how the house was being built" and there appeared to be "an inconsistency in the way the house was being framed at that time and the way the plans were supposed to be." Randel Booth returned to Texas and tried to speak with John Sparks about their concerns, but the conversation turned into a confrontation. Randel Booth called his wife and told her about the disagreement and then, John Sparks called Cynthia Booth and told her that he would not work with Randel Booth anymore and she would have to come to Texas. Cynthia Booth called Johnathan Sparks who told her his father, John Sparks, might be difficult to talk to and not to bring up the terms of the contract. When Cynthia Booth came to Texas, John Sparks told her the house could not be built the way it looked on the plans, all he could do was to try to fix it,

and if she was not happy, she should sue the architect. The Boothes intended to sue the architect, but were unable to get his name from John Sparks or Lawson.

During the construction, Randel Booth stopped signing the requests for a draw because the work had not been done. John Sparks demanded more money and indicated that if he did not get it, he would quit the job. In July 2002, John Sparks left the job. The Boothes lived in a camper while Randel Booth cleaned up the garbage that had been left at the house. Eventually, the Boothes had to move into the unfinished house even though it did not have any heating, cooling, or a septic system. Meanwhile, John Sparks filed a mechanic's lien, which prevented the Boothes from finishing the house.

The mortgage company asked the Boothes to have a builder look at the house to see if it could be finished. The Boothes asked Michael Buck, another custom home builder in the area, to inspect the home. Buck looked at the plans and told the Boothes it had not been prepared by an architect because there was no architect's name on the plans. Buck inspected the house, but did not conduct an invasive inspection, e.g., take boards or sheet rock off of the walls.

With respect to the exterior of the house, Buck determined: (1) the gable of one of the two dormers is larger than the other, so the dormers have different size windows; (2) the back porch is not covered; (3) the brick for the bottom portion of the house does not match the brick on the upper portion of the house, and the plans called for rock and brick; (4) the weep holes in the brick appear to be clogged, causing water damage, so some of the brick will have to be removed and he will need to determine if the wood framing has rotted or if mold has formed and, if it has, replace those portions of the framing;

(5) the insulation is the standard R13, but the contract called for R15, which provides greater "sound deadening" and insulation from the heat; (6) the garage is accessible, but there is no garage door, and there is no driveway, pavement, or swimming pool as specified in the contract; and (7) the type of foundation recommended for the area is a post-tension foundation because of the type of soil, but the house has a rebar foundation that has ten to twenty cracks that run from one side of the foundation to the other, which will require extensive foundation repair.

As to the interior of the house, Buck observed: (1) the interior of the house needs to be reconfigured because the dimensions are different from the plans; (2) the fireplace was not bricked on the sides; (3) the house was not wired for a control command module as specified in the contract; (4) there are no fixtures or cabinets in the kitchen or bathroom, although there is "makeshift" cabinetry in the kitchen; (5) there is plumbing and electrical wiring in the middle of the kitchen floor, but no island; (6) there is no trim work, i.e., base boards, door trim, moldings, or crown moldings in the house, and the interior walls have not been painted; (7) plant shelves, which were to be on the exterior of the house, are in the interior and sagging in the middle; (8) only one of the french doors opens, while the other is immobile; (9) there are no art niches as required by the plans, so sections of the wall will have to be removed and reframed; (10) the floors are bare concrete, there is no finished flooring; and (11) the duct work and an inside air conditioning unit are in place, but there is no electrical work or outside unit. Buck estimated the cost of repairing and completing the house as near as possible to the specified plans was $350,000.

The Boothes sued Johnathan Sparks, John Sparks, Sparks Heritage Homes, and Covenant Builders for common law fraud, fraud in a real estate transaction, breach of contract, negligent misrepresentation, negligence, slander of title, negligence per se, and violations of the DTPA. The Boothes alleged that Sparks Heritage Homes and Covenant Builders should be jointly and severally liable for the acts and omissions of John Sparks and Johnathan Sparks under the theories of agency and respondeat superior. Also, the Boothes alleged that John Sparks should be jointly and severally liable for the conduct of Sparks Heritage Homes under the theory of alter ego. Johnathan Sparks and Covenant Builders filed a motion for summary judgment. The trial court granted the motion for summary judgment, in part, dismissing all but the DTPA claim against Johnathan Sparks. The case was tried to the trial court. The trial court granted Covenant Builders's motion for directed verdict. Also, the trial court found Johnathan Sparks, Sparks Heritage Homes, and John Sparks jointly and severally liable for damages in the amount of $219,121 and additional damages pursuant to the DTPA in the amount of $498,242. Further, the trial court found that Sparks Heritage Homes materially breached the mechanic's lien contract and cancelled the contract.

## II. LEGAL SUFFICIENCY OF EVIDENCE

In issues one through four, Johnathan Sparks, Sparks Heritage Homes, and John Sparks argue the evidence is legally insufficient because the expert testimony does not support the Boothes' claim for damages, there is no evidence to prove Johnathan Sparks's actions were the producing cause of the Boothes' damages, they conclusively proved the affirmative defense of constructive knowledge, and the evidence

fails to prove John Sparks was the alter ego of Sparks Heritage Homes.

### A. Standard of Review

When no findings of fact or conclusions of law are requested or filed, an appellate court implies all necessary findings in support of the trial court's judgment. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex.1992). However, when a reporter's record is included in the record on appeal, the implied findings may be challenged for legal and factual sufficiency. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989) (per curiam).

When an appellant attacks the legal sufficiency of an adverse finding on an issue for which he did not have the burden of proof, he must demonstrate there is no evidence to support the adverse finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Pulley v. Milberger,* 198 S.W.3d 418, 426 (Tex.App.-Dallas 2006, pet. denied). A legal sufficiency review of a no-evidence point of error must credit the favorable evidence if a reasonable fact-finder could and disregard the contrary evidence unless a reasonable fact-finder could not. *See Kroger Tex. Ltd. v. Suberu,* 216 S.W.3d 788, 793 (Tex.2006); *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex. 2005); *Pulley,* 198 S.W.3d at 426. An appellate court will sustain a no-evidence point of error when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 727 (Tex. 2003); *Pulley,* 198 S.W.3d at 426; *see Wilson,* 168 S.W.3d at 809.

Anything more than a scintilla of evidence is legally sufficient to support a trial court's finding. *See Marathon,* 106 S.W.3d at 727. However, a challenge to the legal sufficiency of the evidence will be sustained when the evidence offered to establish a vital fact does not exceed a scintilla. *See Kroger,* 216 S.W.3d at 793; *Wilson,* 168 S.W.3d at 810. Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *See Kroger,* 216 S.W.3d at 793.

### B. Expert Witness Evidence to Support Claim for Damages

In issue one, Johnathan Sparks, Sparks Heritage Homes, and John Sparks argue the evidence is legally insufficient because the expert testimony does not support the Boothes' claim for damages. They argue the two expert witnesses, Kevin Cummings and Michael Buck, were not qualified to give expert testimony. Also, with respect to Cummings, they argue his opinions were not based on a reliable foundation or grounded in "the methods and procedures of science." With respect to Buck, they argue his testimony was not based on a reliable foundation and was "conclusionary." The Boothes respond that the experts' qualifications met the requirements of Texas Rule of Evidence 702 and their testimony, viewed in its entirety, was sufficient to meet the Boothes' burden of proof for damages.

#### 1. Applicable Law

To preserve an issue for appellate review, a party is required to show: (1) a timely and specific request, objection, or motion bringing the issue to the trial court's attention; and (2) the trial court ruled on the party's request, objection, or motion, or the trial court refused to rule and the party objected to that refusal.

TEX.R.APP. P. 33.1(a). A party must make a timely objection to an expert's qualifications to preserve for appeal his contention that the expert was unqualified. *See Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 896–97 (Tex.App.-Texarkana 2004, pet. denied). When a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct the analysis. *Coastal Transport Co. v. Crown Central Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex.2004).

 However, when a challenge to an expert witness's opinion is restricted to the face of the record, e.g., when the expert's testimony is speculative or conclusory, then a party may challenge the legal sufficiency of the evidence even in the absence of an objection to its admissibility. *Coastal*, 136 S.W.3d at 233. An expert opinion is conclusory when it offers an opinion with no factual substantiation. *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 463 (Tex.App.-Dallas 2005, no pet.) (citing *see generally Coastal*, 136 S.W.3d 227). The expert must explain how he reached his conclusion. *Croft*, 175 S.W.3d at 464.

### 2. Application of the Law to the Facts

Johnathan Sparks, Sparks Heritage Homes, and John Sparks did not object to Cummings's or Buck's testimony during the trial. Sparks Heritage Homes did not file a motion for new trial. Although John Sparks filed a motion for new trial, his motion states only that "The Judgment signed on January 26, 2006 against [John Sparks] is not in accordance with the law and challenges the evidence presented at the time of trial." The trial court denied John Sparks's motion for new trial. Johnathan Sparks and Covenant Builders filed a motion for new trial that argues the evidence was legally and factually insufficient to prove the Boothes' damages because Cummings and Buck were not qualified and their opinions were not based on standards recognized by an outside entity. The motion for new trial of Johnathan Sparks and Covenant Builders's was also denied.

 In this case, Johnathan Sparks, Sparks Heritage Homes, and John Sparks's challenge to Cummings's and Buck's testimony addresses the experts' qualifications and the underlying methodology or foundational data used in forming their opinions. As such, the parties were required to object before the trial court to these experts and their opinions, and to obtain an adverse ruling. They did neither. Accordingly, we conclude Johnathan Sparks, Sparks Heritage Homes, and John Sparks did not preserve for appeal their complaints that Cummings and Buck are not qualified to give expert testimony or that their opinions were not based on a reliable foundation. *See Coastal*, 136 S.W.3d at 233; *Pilgrim's Pride*, 134 S.W.3d at 896–97. Nevertheless, their separate complaint that Buck's testimony was legally insufficient because it was conclusory is preserved. *See Coastal*, 136 S.W.3d at 233.

 Johnathan Sparks, Sparks Heritage Homes, and John Sparks complain the following testimony of Buck shows his estimate was conclusory:

DEFENSE: You just stated right before we left that your estimate was $350,000.

BUCK: Yes, sir.

DEFENSE: Can you tell me how you arrived at that?

BUCK: I arrived at that—I build houses for about—approximately $60 a square foot and in my estimating I

contacted most of my subs on that. With the problems that exist and with the efforts I would have to take to make sure of the foundation and things like that, you're basically looking at almost twice the labor involved to correct that house, as it would be to build it. That estimate comes from one and a half times the building fee. So it's just under the double building fee that, in all honesty, it would probably take to correct that house.

Buck testified he inspected the house and he specifically identified the repairs that were needed, the portions of the construction that were incomplete, and the portions of the construction that had not been started. After consulting with his subcontractors, Buck gave his estimate of the cost for repairing and completing the house in a manner consistent with the contract, specifications, and plans. We conclude the expert testimony of Buck was legally sufficient to support the Boothes' claims for damages because Buck's testimony was not conclusory.

The first issue is decided against Johnathan Sparks, Sparks Heritage Homes, and John Sparks.

### C. Producing Cause of Damages

In issue two, Johnathan Sparks argues the evidence is legally insufficient because there was no evidence to prove his actions were the producing cause of the Boothes' damages. He claims that neither he nor Covenant Builders were engaged in the construction of the Boothes' house. Also, he argues the Boothes presented no evidence to show their damages were directly related to his alleged misrepresentation. Johnathan Sparks argues the Boothes' evidence of damages "proves nothing more than [his] representation, at most, furnished a condition that made the alleged damages possible." Also, during oral ar-

gument, he asserted the contract for the construction of the house was between the Boothes and Sparks Heritage Homes, and there is no provision in the contract that permits the Boothes to select which personnel of Sparks Heritage Homes will build their house. The Boothes respond that the evidence showed Johnathan Sparks was an agent of John Sparks and Sparks Heritage Homes, involved in the formation of the contract, responsible for the design and plans for the Boothes' house, and the plans he produced could not be constructed.

### 1. Applicable Law

■ The DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce ..." Tex. Bus. & Com.Code Ann. § 17.46(a) (Vernon Supp.2006). To recover under the DTPA, the plaintiff must show that: (1) he is a consumer; (2) the defendant engaged in a false, misleading, or deceptive act; and (3) the act constituted a producing cause of the plaintiff's damages. Id. § 17.50(a); Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995).

■ To recover under the DTPA, the plaintiff must be a consumer. See Ortiz v. Collins, 203 S.W.3d 414, 424 (Tex. App.-Houston [14th Dist.] 2006, no pet.). Whether a plaintiff is a consumer is a question of law. See id. Consumer status depends on the transaction, not the contractual relationship between the parties. See Flenniken v. Longview Bank & Trust Co., 661 S.W.2d 705, 707 (Tex.1983); Ortiz, 203 S.W.3d at 424. A plaintiff need not show contractual privity with the defendant to assert consumer status under the DTPA. See Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 649 (Tex.1996); Ortiz, 203 S.W.3d at 424. Instead, the plaintiff must show the defendant's deceptive conduct oc-

curred in connection with a consumer transaction. *See Ortiz*, 203 S.W.3d at 424.

■■■■ To recover under the DTPA, the plaintiff must also show the defendant's actions were the producing cause of actual damages. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 502 (Tex.2001). This requires some showing that the defendant's act or omission was a cause in fact of the plaintiff's injury. *See id.* To establish the producing cause element, the plaintiff must show the defendant's action was a substantial factor in bringing about the plaintiff's injury, without which the injury would not have occurred. *See Doe*, 907 S.W.2d at 478. However, under this standard, it is not necessary for the plaintiff to show the harm was foreseeable. *See Helena Chem.*, 47 S.W.3d at 502.

### 2. Application of the Law to the Facts

■■■ Cynthia Booth testified Johnathan Sparks told the Boothes that they could choose one of the model homes pictured on the wall or design their own home with an architect for a design fee of $2,500 and he would submit the computer-generated design to the architect who would prepare the plans for the house. Cynthia Booth stated she believed Johnathan Sparks through his company, Covenant Builders, was going to build her house. Also, she stated that when they noticed the contract was with Sparks Heritage Homes, not Covenant Builders, Johnathan Sparks and John Sparks explained that they conducted business out of the same office, all legal documents were done through Sparks Heritage Homes, and John Sparks was the "primary" who signed the contracts. When the Boothes met with John Sparks and Johnathan Sparks to go over the "architectural drawing," there were a few inaccuracies, and the Sparks indicated they would send the drawings back to the architect. When the Boothes began to have concerns that the house was not being constructed like the plans, John Sparks told Cynthia Booth the house could not be constructed according to the plans. Cynthia Booth stated they intended to sue the architect, but were unable to get his name from John Sparks or Lawson.

Lawson testified that, although the Sparks customarily used the term "architect," they used a design company on a regular basis. John Sparks stated he did not hire an architect, even though the accounting documents indicate payments to an architect. John Sparks used a design company in Royse City, Texas. Cummings, an architect, testified he reviewed the plans for the Boothes and the house could not be constructed according to the plans because the elevations do not agree. Also, in his opinion, it would be a significant undertaking to draw a proper set of plan specifications in order to complete the house.

Although the Boothes' contract was with Sparks Heritage Homes, the record reflects Johnathan Sparks represented to the Boothes that an architect would design the house. There is substantial testimony relating to the defects in the house resulting from inadequate plans. Accordingly, we conclude there is legally sufficient evidence to prove Johnathan Sparks was the producing cause of the Boothes' damages.

The second issue is decided against Johnathan Sparks.

### D. Defense of Constructive Knowledge

■■■ In issue three, Johnathan Sparks, Sparks Heritage Homes, and John Sparks argue they proved, as a matter of law, their affirmative defense of constructive knowledge. They argue that, although the Boothes claim they did not know Sparks Heritage Homes would be their builder until closing on the construction loan, the Boothes signed a contract with Sparks

Heritage Homes and wrote a check for $2,500 to Sparks Heritage Homes before the closing. As a result, Johnathan Sparks, Sparks Heritage Homes, and John Sparks claim the Boothes are deemed to have constructive knowledge of the terms of the contract, the DTPA does not alter their constructive knowledge of the contract, and the Boothes are prohibited, as a matter of law, from recovering under the DTPA. The Boothes respond that the evidence shows they were misled and the representations of the Sparks caused them to be confused or to misunderstand the source, sponsorship, approval, or certification of the goods and services they were purchasing.

 In their brief, Johnathan Sparks, Sparks Heritage Homes, and John

Sparks argue, "The evidence presented by [the Boothes] conclusively proves the affirmative defense asserted by the Appellants in the trial court. As a matter of law, [the Boothes] may not assert representations that contradict the contents of a written contract or deed they signed." The brief does not cite any case law showing constructive knowledge is an affirmative defense or advise this Court of the elements that must be proven to establish such an affirmative defense. The record does not contain any pleadings showing that John Sparks and Sparks Heritage Homes asserted any affirmative defenses. However, Johnathan Sparks and Covenant Builders asserted constructive knowledge as an affirmative defense.[2] Constructive knowl-

---

**2.** Johnathan Sparks and Covenant Builders's affirmatives defenses filed on November 24, 2004, list constructive knowledge as a separate affirmative defense and state the following with respect to constructive knowledge:

**Affirmative Defense—Constructive Knowledge**

11. [Johnathan Sparks and Covenant Builders] assert the affirmative defense of Constructive Knowledge. [The Boothes] have alleged that they did not know [Sparks] Heritage [Homes] would be the builder on their home until closing on their construction loan. The closing on the construction loan occurred on April 9, 2002, yet, [the Boothes] signed the contract with [Sparks] Heritage [Homes] and paid [Sparks] Heritage [Homes] $2,500 on March 6, 2002. [The Boothes] are, therefore, deemed to have constructive knowledge of the terms of the contract. The general rule is that every person who has the capacity to enter into a contract is held to know what words were used in the contract, to know their meaning, and to understand their legal effect. *Indemnity Ins. Co. of North Am. v. W.L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553, 556 (1937)[sic]; accord: *Vera v. North Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex.App.-San Antonio 1998, no pet.) [sic]; *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d at 845[sic]; *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 146 (Tex.App.-Houston [1st Dist.] 1986, no writ) [sic]. The conse-

quence of this rule is that a party to a contract may not successfully claim that he believed the provisions of the contract were different from those plainly set out in the agreement or that he did not understand the meaning of the language used. *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d at 946 [846][sic]; *Texas Employers Ins. Ass'n v. Watkins*, 90 S.W.2d 622 (Tex.Civ.App.-Fort Worth 1936), writ dism'd, 130 Tex. 383, 110 S.W.2d 1153 (1937)[sic]. Specifically, Paragraph II of the Construction Contract states that the price of the home was based upon blueprints and Paragraph VIII of the Construction Contract states that the [Boothes] and [Sparks] Heritage [Homes] had agreed upon the plans and specifications which takes precedence over the blue prints. Therefore, according to the Construction Contract, the blueprints were in existence prior to the [Boothes] signing either the Construction Contract or closing on the Construction Loan. That means that the [Boothes] had well over a month prior to the closing of the Construction Loan to review the blueprints. § [sic] 1051.702 of the Texas Occupations Code entitled Use of Architect's Seal states in pertinent part:

• (a) An architect shall maintain a seal as approved by the board and shall stamp or impress the seal on each drawing or specification issued from the architect's office for use in this state.

edge is not an affirmative defense.[3] Accordingly, we construe the third issue as a claim that the evidence is legally insufficient to prove the Boothes' DTPA claims because, as a matter of law, the Boothes had constructive knowledge that they contracted with Sparks Heritage Homes.

In support of their position on this issue, Johnathan Sparks, Sparks Heritage Homes, and John Sparks state, "The general rule is that every person who has the capacity to enter into a contract is held to what words were used in the contract, to know their meaning, and to understand their legal effect." *See Indem. Ins. Co. of N. Am. v. W.L. Macatee & Sons*, 129 Tex. 166, 171, 101 S.W.2d 553, 556 (Tex.Com. App.1937); *Vera v. N. Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex.App.-San Antonio 1998, no pet.) (op. on reh'g); *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 146 (Tex.App.-Houston [1st Dist.] 1986, no writ). Based on this rule, they maintain "the case law is clear that the DTPA does not alter the constructive knowledge rule for items contained within the four corners of a contract or deed," and the Boothes are "barred, as a matter of law, from recovering, even under the DTPA, on a claim they thought [Covenant Builders] was going to build their house when they signed a contract with [Sparks Heritage Homes] and testified they clearly understood the distinction between the two entities."

However, the authorities cited by Johnathan Sparks, Sparks Heritage Homes, and John Sparks state, "As a general rule, every person having the capacity to enter into contracts, **in the absence of fraud, misrepresentation, or concealment,** must be held to have known what words were used in the contract and to have known their meaning, and he must also be held to have known and fully comprehended the legal effect of the contract." *Nguyen*, 714 S.W.2d at 146 (citing *Indem. Ins.*, 129 Tex. at 171, 101 S.W.2d at 556) (emphasis added); *see Vera*, 989 S.W.2d at 17. The cited cases do not stand for the proposition that there is a bar, as a matter of law, to a DTPA claim when the parties have entered into a contract and the identity of the contracting parties is set out in the written agreement as Johnathan Sparks, Sparks Heritage Homes, and John Sparks appear to argue. Accordingly, we conclude the Boothes' DTPA claims are not barred, as a matter of law, based on the Boothes constructive knowledge that they contracted with Sparks Heritage Homes.

The third issue is decided against Johnathan Sparks, Sparks Heritage Homes, and John Sparks.

### E. Alter Ego

In issue four, John Sparks argues the evidence is legally insufficient because there is no evidence to prove he was the alter ego of Sparks Heritage Homes. He

---

The only way [the Boothes] could not have know [sic] that the blueprints were not drawn by an architect is that the [Boothes] never looked at the blueprints.

**3.** *Although constructive knowledge is not an affirmative defense, it is an element of the affirmative defenses of estoppel, waiver, and good faith purchaser status. See, e.g., Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 515–16 (Tex.1998) (estoppel); *Sedona Contracting, Inc. v. Ford, Powell & Carson,*

*Inc.*, 995 S.W.2d 192, 195 (Tex.App.-San Antonio 1999, pet. denied) (waiver); *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex.2001) (good faith purchaser status). None of those defenses were asserted by John Sparks or Sparks Heritage Homes. However, Johnathan Sparks and Covenant Builders did assert the affirmative defense of waiver, claiming the Boothes knew at the time of closing that Covenant Builders would not be building their house.

argues the Boothes were aware they were contracting with a corporation and that he was an agent of Sparks Heritage Homes. Also, John Sparks argues the Boothes cross-examined him on his failure to follow corporate formalities, which "is no longer a factor in 'alter ego' cases." The Boothes respond that the evidence shows Sparks Heritage Homes operated for the direct personal benefit of John Sparks.

### 1. Applicable Law

▉▉▉▉ A corporation is a separate legal entity from its shareholders, officers, and directors. *See Boyo v. Boyo,* 196 S.W.3d 409, 419 (Tex.App.-Beaumont 2006, no pet.); *Wynne v. Adcock Pipe & Supply,* 761 S.W.2d 67, 68 (Tex.App.-San Antonio 1988, writ denied). A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations. *Willis v. Donnelly,* 199 S.W.3d 262, 271 (Tex.2006). Under section 21.223(a)(2) of the Texas For–Profit Corporation Law, a shareholder "may not be held liable to the corporation or its obligees with respect to ... any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the [share]holder ... is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory." Tex. Bus. Orgs.Code Ann. § 21.223(a)(2) (Vernon Supp.2006) (previously codified at Tex. Bus. Corp. Act Ann. art. 2.21, § A (Vernon 2003)); *Willis,* 199 S.W.3d at 272. The liability of a shareholder for a contractual corporate obligation limited by section 21.223 "is exclusive and preempts any other liability imposed for that obligation under common law or otherwise." Tex. Bus. Orgs.Code Ann. § 21.224 (previously codified at Tex.

Bus. Corp. Act Ann. art. 2.21, § B); *Willis,* 199 S.W.3d at 272.

However, the statutory limit to a shareholder's liability under section 21.223(a) does not prevent or limit the liability of a shareholder if the obligee demonstrates the shareholder "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the [share]holder." Tex. Bus. Orgs.Code Ann. § 21.223(b) (previously codified at Tex. Bus. Corp. Act Ann. art. 2.21, § A); *Willis,* 199 S.W.3d at 272. This proposition generally is referred to as piercing the corporate veil. *See Castleberry v. Branscum,* 721 S.W.2d 270, 278 (Tex. 1986), *superseded in part by* Tex. Bus. Orgs.Code Ann. § 21.223(a)(2) (previously codified at Tex. Bus. Corp. Act Ann. art. 2.21, § A).

▉▉▉▉ The alter ego doctrine is one theory used to pierce the corporate veil. *See Castleberry,* 721 S.W.2d at 272. The theory may be applied if there is a unity between the corporation and the individual to the extent that the corporation's separateness has ceased, and holding only the corporation liable would be unjust. *See id.* As proof of alter ego, a court may consider: (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate. *See Mancorp,* 802 S.W.2d at 228 (Tex.1990); *Morris v. Powell,* 150 S.W.3d 212, 220 (Tex.App.-San Antonio 2004, no pet.), *overruled on other grounds Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 788–89 (Tex.2005). However, the failure of a corporation to observe any corporate formali-

ty is no longer a factor in considering whether alter ego exists. *See* TEX. BUS. ORGS.CODE ANN. § 21.223(a)(3) (previously codified at TEX. BUS. CORP. ACT ANN. art. 2.21, § A(3)); *see Morris,* 150 S.W.3d at 220; *Schlueter v. Carey,* 112 S.W.3d 164, 170 (Tex.App.-Fort Worth 2003, pet. denied); *Howell v. Hilton Hotels Corp.,* 84 S.W.3d 708, 714 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (op. on reh'g); *Pinebrook Properties, Ltd. v. Brookhaven Lake Prop. Owners Ass'n,* 77 S.W.3d 487, 499 (Tex.App.-Texarkana 2002, pet. denied). Also, an individual's standing as an officer, director, or majority shareholder of an entity alone is insufficient to support a finding of alter ego. *See Morris,* 150 S.W.3d at 220; *Goldstein v. Mortenson,* 113 S.W.3d 769, 781 (Tex.App.-Austin 2003, no pet.); *Schlueter,* 112 S.W.3d at 170.

**2. Application of the Law to the Facts**

■ In their third amended petition, the Boothes alleged claims against John Sparks, individually and as a representative of Sparks Heritage Homes, for common law fraud and fraud in a real estate transaction, and against John Sparks for violations of the DTPA. Also, they alleged John Sparks was jointly and severally liable for the wrongful conduct of Sparks Heritage Homes under the theory of alter ego. The trial court's judgment found Sparks Heritage Homes, John Sparks, and Johnathan Sparks jointly and severally liable for damages, additional damages pursuant to the DTPA, attorneys' fees, and court costs. Although the trial court's judgment makes no specific findings of fraud or alter ego, there are implied findings of fraud and alter ego because the trial court did not issue findings of fact and conclusions of law. *See Holt Atherton,* 835 S.W.2d at 83 (when no findings of fact or conclusions of law, appellate court implies all necessary findings to support judgment).

John Sparks testified he was the president, secretary, sole shareholder, and sole director of Sparks Heritage Homes. Also, John Sparks stated Sparks Heritage Homes had no assets because: (1) it was a subchapter S corporation so all benefits and detriments flowed to him; and (2) he, personally, "rented the building to [the corporation]." Accordingly, we conclude the evidence is legally sufficient to support the trial court's implied finding of alter ego.

The fourth issue is decided against John Sparks.

## III. TRIAL COURT'S JURISDICTION

In issue five, John Sparks argues the trial court did not have jurisdiction over the Boothes' claim that he was the alter ego of Sparks Heritage Homes because when the Boothes participated in the bankruptcy proceedings for Sparks Heritage Homes, they submitted their alter ego claim to the bankruptcy court's jurisdiction, which caused the trial court to lose jurisdiction. Also, he argues he preserved this issue for appeal because the reporter's record shows that during the trial, he offered exhibits nos. 7 and 8, which were attached to his bill of exceptions as exhibit nos. 1–6. In the alternative, John Sparks argues he did not need to present these exhibits to the trial court to preserve this issue because the trial court's lack of jurisdiction can be raised on appeal, even if the evidence was not presented to the trial court. The Boothes respond that John Sparks failed to preserve any error relating to the bankruptcy proceeding because: (1) he did not plead discharge in bankruptcy or res judicata as an affirmative defense; (2) his argument on appeal is different than his argument to the trial court; (3) the bill of exceptions attacking the Boothes' alter ego claim against John

Sparks on the basis of bankruptcy was filed by Johnathan Sparks and Covenant Builders, not John Sparks; and (4) the trial court's statement of correction, which was accepted by Johnathan Sparks and Covenant Builders, provides that exhibit nos. 1–6 were not offered to the trial court and the trial court did not refuse to admit them. Also, the Boothes argue the trial court had jurisdiction because the bankruptcy proceedings were closed.

### A. Preservation of Error

 "To complain on appeal about a matter that would not otherwise appear in the record, a party must file a formal bill of exceptions." TEX.R.APP. P. 33.2. A bill of exceptions exists when a trial court refuses to admit evidence and counsel then provides that evidence for appellate review. *See id.; Spivey v. James,* 1 S.W.3d 380, 385 (Tex.App.-Texarkana 1999, pet. denied). To preserve the error of a trial court in excluding evidence through a bill of exceptions, a party must: (1) attempt during the evidentiary portion of the trial to introduce the evidence; (2) if an objection is lodged, specify the purpose for which it is offered and give the trial court reasons why the evidence is admissible; (3) obtain a ruling from the trial court; and (4) if the trial court rules the evidence is inadmissible, make a record, through a bill of exceptions of the precise evidence the party desires admitted. *See Richards v. Comm'n for Lawyer Discipline,* 35 S.W.3d 243, 252 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Unless the evidence was presented to the trial court at trial, there is no error shown. *See Clone Component Dist. of Am., Inc. v. State,* 819 S.W.2d 593, 596 (Tex.App.-Dallas 1991, no writ); *Spivey,* 1 S.W.3d at 385.

### B. Application of the Law to the Facts

 During the evidentiary portion of the trial, counsel for Johnathan Sparks and Covenant Builders attempted to admit Defendant's exhibit nos. 7 and 8. These exhibits are not included in the record on appeal. The Boothes' counsel objected to the exhibits based on relevancy. The trial court stated that discharge in bankruptcy is an affirmative defense and there was no pleading to that effect. Then, counsel for the Boothes argued there was no pleading raising the affirmative defense of discharge in bankruptcy, and counsel for Johnathan Sparks and Covenant Builders did not represent Sparks Heritage Homes. Counsel for Johnathan Sparks and Covenant Builders argued "we're not going for a discharge in bankruptcy. We're going res judicata. That the ruling in bankruptcy is res judicata to the issues that were tried in the bankruptcy court. And there is no discharge for Chapter 7 corporation [sic]." In response to the trial court's inquiry regarding what issues he was claiming were adjudicated, counsel for Johnathan Sparks and Covenant Builders argued, "One, that Sparks Heritage Homes is a valid and sustaining corporation. Number two, that Johnathan Sparks was an employee of that corporation. The facts that are alleged in the petition in bankruptcy are adjudicated unless objected to." Counsel for the Boothes argued there was also no pleading raising the affirmative defense of res judicata. The trial court sustained the Boothes' counsel's objection on the basis that the defendants did not plead these affirmative defenses.

Johnathan Sparks and Covenant Builders filed a bill of exceptions arguing, "the general appearance by the [Boothes] in the Bankruptcy Court and the actions in the Bankruptcy Court constitute a statutory bar against [the trial court] hearing or considering [the Boothes'] alter ego claim and that [the trial court] was without jurisdiction to hear [the Boothes'] alter ego

claim." Attached to the bill of exceptions were eight exhibits. The Boothes objected to the bill of exceptions. The trial court issued a statement of corrections, suggesting those corrections to the bill it believed were necessary to make it accurately reflect the proceedings in the trial court. *See* Tex.R.App. P. 33.2(c)(2)(B). The statement of corrections states, in part:

## STATEMENT OF CORRECTIONS

The trial court, after reviewing the Exhibits attached and proceeding under Rule 33.2(c)(2)(B) Tex.R.App. P., suggests the following corrections to the Bill of Exceptions presented by [Johnathan Sparks and Covenant Builders]:

1) The evidence shown by Exhibits 1–6 was never offered at trial and the trial court never refused to admit same.

2) Exhibit 7 is a pleading filed with the trial court.[4]

3) Exhibit 8 consists of two letters. The letter dates 7–25–05 was never offered at trial and the trial court never refused to admit same. The letter dated 6–15–05 was reviewed by the [trial] court before trial and the [trial] court takes judicial knowledge of it.

Johnathan Sparks and Covenant Builders accepted the trial court's corrections. *See id.*

■ First, although John Sparks argues this issue is one of jurisdiction, discharge in bankruptcy and res judicata are affirmative defenses that must be pleaded. *See* Tex.R. Civ. P. 94. John Sparks did not plead any affirmative defenses and he did not file a bill of exceptions. The bill of exceptions was filed by Johnathan Sparks and Covenant Builders.

Second, assuming without deciding Johnathan Sparks and Covenant Builders's bill of exceptions applies to John Sparks, we address whether this issue was preserved for appeal. To preserve this issue for appeal, John Sparks had to present the evidence to the trial court and obtain a ruling from the trial court that the evidence was inadmissible. *See Richards,* 35 S.W.3d at 252; *Clone,* 819 S.W.2d at 596. The trial court's statement of corrections, which was accepted by Johnathan Sparks and Covenant Builders, specifies that exhibit nos. 1–6, which were pleadings and orders relating to the bankruptcy proceedings, were not presented to the trial court and the trial court did not refuse to admit them. Accordingly, we conclude John Sparks did not preserve this issue for appeal.

Issue five is decided against John Sparks.

## IV. COURT COSTS

In issue six, Covenant Builders argues the trial court erred when it failed to award it court costs after granting its motion for directed verdict. Covenant Builders argues the trial court abused its discretion because there is nothing in the record showing good cause why the costs should be assessed otherwise. The Boothes respond that the trial court specifically awarded costs of court to the Boothes and denied all other relief sought by any other party. Also, the Boothes contend that trial courts are directed not to recite findings in the judgment and, in the absence of findings of fact and conclusions of law, the trial court is presumed to have found the necessary facts to support each element of the judgment.

**4.** Exhibit 7 is the Boothes' motion to withdraw their jury demand and request for a trial setting.

### A. Standard of Review

An appellate court reviews a trial court's award of costs for an abuse of discretion. *Mitchell v. Bank of Am., N.A.,* 156 S.W.3d 622, 630 (Tex.App.-Dallas 2004, pet. denied). Absent an abuse of discretion, an appellate court will not reverse a trial court's assessment of costs. *Id.* Also, unless the record demonstrates an abuse of discretion, the trial court's assessment of costs for good cause should not be disturbed on appeal. *Rogers v. Walmart Stores, Inc.,* 686 S.W.2d 599, 601 (Tex. 1985).

### B. Applicable Law

■■■■ Texas Rule of Civil Procedure 131 provides that "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX.R. CIV. P. 131; *see also Mitchell,* 156 S.W.3d at 630. Taxing costs against a successful party, generally contravenes rule 131. *See Furr's Supermarkets, Inc. v. Bethune,* 53 S.W.3d 375, 376 (Tex.2001). However, under rule 141, a trial court "may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." TEX.R. CIV. P. 141; *see also Marion v. Davis,* 106 S.W.3d 860, 868 (Tex. App.-Dallas 2003, pet. denied). Rule 141 has two requirements: (1) there must be good cause; and (2) it must be stated on the record. *See Furr's,* 53 S.W.3d at 376. "Good cause" is an elusive concept that varies from case to case. *See id.* at 376–77; *Rogers,* 686 S.W.2d at 601. Under rule 141, the trial court may state good cause in a written order or judgment, or orally in a hearing. *See Marion,* 106 S.W.3d at 868. A trial court's failure to state on the record a finding of good cause to vary from rule 131 constitutes an abuse of discretion. *See id.* at 869. Also, a trial court abuses its discretion when its judg-

ment does not assess costs or state any basis for varying from rule 131. *See McNamara v. Fulks,* 855 S.W.2d 782, 785 (Tex.App.-El Paso 1993, no writ); *cf. City of Vernon v. Montgomery,* 33 S.W. 606, 606 (Tex.Civ.App.1895) (not necessary for finality of judgment that it assess costs because it follows from statute that successful party recovers costs from adversary); 16 TEX. JUR.3D *Costs* § 101 (2006) (not necessary that judgment expressly adjudge costs against either party).

### C. Application of the Law to the Facts

■■■■ Covenant Builders requested court costs in its first amended answer as well as other pleadings. The trial court's judgment granted Covenant Builders's motion for directed verdict and ordered that the Boothes take-nothing against Covenant Builders. Also, the judgment orders that the Boothes recover their costs of court from Johnathan Sparks, Sparks Heritage Homes, and John Sparks. However, contrary to the Boothes' assertion that the judgment awarded them costs of court with respect to Covenant Builders, the judgment is silent with respect to how costs will be assessed between the Boothes and Covenant Builders. Further, the record does not state any basis for its lack of award. Accordingly, we conclude the trial court abused its discretion when it failed to either assess costs in favor of Covenant Builders pursuant to rule 131 or state on the record some justification for refusing to follow rule 131 as required by rule 141. *See McNamara,* 855 S.W.2d at 785.

The sixth issue is decided in favor of Covenant Builders.

## V. ATTORNEY'S FEES ON APPEAL

■■■■ In issue seven, Johnathan Sparks, Sparks Heritage Homes, and John Sparks argue the trial court erred when it unconditionally awarded the Boothes attorney's

fees on appeal. The Boothes concede the award of attorney's fees on appeal should have been conditioned on a successful appeal and state they have no objection to the judgment being modified accordingly. As a result, we do not review issue seven on the merits.

Issue seven is decided in favor of Johnathan Sparks, Sparks Heritage Homes, and John Sparks because the Boothes have conceded this issue.

## VI. CONCLUSION

The evidence is legally sufficient to support the trial court's judgment. John Sparks failed to preserve for appeal his claim that the trial court should not have determined the Boothes' claim of alter ego. However, the trial court abused its discretion when it failed to assess courts costs in favor of Covenant Builders or state on the record its justification for refusing to do so. Finally, the Boothes concede the judgment should not have awarded them unconditional attorney's fees on appeal.

The trial court's judgment is reversed, in part, with respect to the issue of assessment of court costs between Covenant Builders and the Boothes, and remanded for further proceedings consistent with this opinion. The trial court's judgment is modified to reflect that the award of attorney's fees on appeal is conditioned on a successful appeal. As modified, the remaining portions of the judgement are affirmed.