**REVERSE and RENDER; Opinion issued February 5, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-10-00590-CV
_____

**ADVOCARE INTERNATIONAL, L.P., Appellant**

**V.**

**KAREN FORD, SHERRY T. BRADSHAW, STEPHANIE MURPHY, RODNEY G. POWELL, JR., LARRY MCDANIEL, ROB DEBOER, HERB AND DIANE HEFLIN, AND DARRELL BROWN, Appellees**

═══════════════════════════════════════════════

**On Appeal from the 298th District Court**
**Dallas County, Texas**
**Trial Court Cause No. 06-11122-M**

═══════════════════════════════════════════════

# MEMORANDUM OPINION

Before Justices Bridges, Murphy, and Richter[1]
Opinion By Justice Bridges

AdvoCare International, L.P. appeals the trial court's judgment in favor of Rodney G.

Powell, Jr., Larry McDaniel, Rob DeBoer, Diane and Herb Heflin, and Darrell Brown.[2] In seven

issues, AdvoCare argues appellees could not recover under the Texas Deceptive Trade Practices

---

[1] The Honorable Martin E. Richter, retired Justice, sitting by assignment.

[2] The claims of Sherry T. Bradshaw and Stephanie Murphy were dismissed with prejudice by order signed September 30, 2009. The trial court's judgment states that one of the jury's findings resulted in Karen B. Ford's claims being barred by limitations. The trial court therefore granted AdvoCare's motion for judgment notwithstanding the verdict as to Ford but otherwise denied the motion. The trial court rendered a take-nothing judgment on Ford's claims, and Ford filed a notice of appeal.

Act (DTPA) because their claims are not based on a consumer transaction, there is no evidence of deceptive trade practices that were a producing cause of damages, the integration clause in the agreement between the parties negates reliance and causation, the jury's findings of unconscionability will not support a judgment and are not supported by any evidence, there is no evidence of damages, the judgment must be set aside as to Darrell Brown, and appellees were not entitled to recover attorney's fees. In a single cross-point, Karen Ford argues her claims were not barred by limitations. We reverse the trial court's judgment and render judgment appellees take nothing on their claims.

AdvoCare sells products through distributors and had approximately 60,000 distributors at the time of trial. From 2003 until the time of trial, AdvoCare terminated twenty-nine distributors, including appellees. AdvoCare's general counsel, Allison Levy, testified AdvoCare has contractual distributorship agreements with its distributors, and the agreements have to be renewed every year. Levy testified there were five ways AdvoCare distributors could earn money. First, distributors could purchase products at a discount between twenty and forty percent and sell the products at retail price. Second, distributors could earn "wholesale commissions" paid by AdvoCare to distributors at the forty-percent discount level when distributors at the twenty-percent discount level they signed up in their "down-line" purchased products. Third, "overrides" were available to certain distributors at a leadership level, consisting of a percentage of the volume of their down-line organization. Fourth, leadership bonuses were paid to recognize distributors that had achieved certain leadership levels. Finally, distributors could earn commissions from sales made by distributors in their "down-line."

Appellees were all terminated, and AdvoCare cited their failure to comply with AdvoCare's requirements and policy as the basis for those terminations. Specifically, AdvoCare

asserted (1) Karen Ford's distributorship was terminated after it learned she had recruited one or more AdvoCare distributors to join another multi-level company, (2) Larry McDaniel's distributorship was terminated because he was soliciting distributors in his downline organization to join another multi-level company, (3) Diane and Herb Heflin's distributorship was terminated because Herb Heflin was soliciting distributors to joint another multi-level company, was making derogatory comments about AdvoCare, and was being disruptive to AdvoCare's business, (4) Rodney Powell's distributorship was terminated for the same reasons the Heflins' distributorship was terminated, (5) Rob DeBoer's distributorship was terminated for the same reasons as the Heflins and Powell but regarding a different company, and (6) Darrell Brown's distributorship was terminated for failing to submit copies of sales receipts to substantiate reported sales.

After they were terminated, appellees filed suit against AdvoCare alleging violations of the DTPA and claims for breach of contract, quantum meruit/unjust enrichment, common law fraud, and promissory estoppel. At trial, the court submitted a jury charge under which the jury found AdvoCare did not breach the distributorship agreements with appellees but did engage in false, misleading, or deceptive acts or practices that appellees relied on to their detriment and that were a producing cause of damages, and the distributorship agreements were unconscionable in that they took advantage of "the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Based on these findings, the jury awarded damages and attorney's fees to each appellee. The parties agree that appellees' DTPA claims are the sole bases for the jury's award of damages.

In its first issue, AdvoCare argues appellees are not entitled to recover under the DTPA because their claims are not based on a consumer transaction. In its seventh issue, AdvoCare makes the related argument that appellees are not entitled to recover attorney's fees because they

are not consumers who have prevailed under the DTPA. *See* TEX. BUS. & COM. CODE ANN. § 17.50(d) (West 2011) ("Each customer who prevails [under the DTPA] shall be awarded court costs and reasonable and necessary attorneys' fees."). Appellees agree that they were successful only on their DTPA cause of action and argue they are entitled to attorney's fees, if at all, only because their DTPA and contract claims are too intertwined to segregate.

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex.1996); *see* TEX. BUS. & COM. CODE ANN. § 17.50(a) (West 2011); *see also id.* §§ 17.45(5), 17.46(b). The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury. *Amstadt,* 919 S.W.2d at 649; *see Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995). In our review of a DTPA claim, we must liberally construe and apply the statute to promote the underlying goals of the statute, which include protecting consumers against false, misleading, and deceptive business practices and unconscionable actions. *See* TEX. BUS. & COM. CODE ANN. § 17.44(a) (West 2002); *Latham v. Castillo,* 972 S.W.2d 66, 68 (Tex.1998).

At least two requirements must be established for a person to qualify as a consumer under the DTPA. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981). One requirement is that the person must have sought or acquired goods or services by purchase or lease. *Id.* Another requirement is that the goods or services purchased or leased must form the basis of the complaint. *Id.* If either requirement is lacking, the person aggrieved by a deceptive act or practice must look to the common law or some other statutory provision for redress. *Id.*

Whether a plaintiff is a consumer is a question of law. *Sparks v. Booth*, 232 S.W.3d 853, 864 (Tex. App.—Dallas 2007, no pet.). We review de novo the trial court's determination that a person was a consumer under the DTPA. *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.—San Antonio 2002, pet. denied).

In their pleadings below, appellees asserted they were "consumers as defined in the DTPA." Appellees further alleged generically that AdvoCare violated the DTPA by (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not; (2) representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; (3) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and (4) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose information was intended to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed.

As to the goods appellees purchased from AdvoCare, appellees alleged, and submitted affidavits, claiming defects in AdvoCare's products, specifically its "Ephedra and PPA products," which had to be taken off the market, disrupting sales efforts. Appellees alleged AdvoCare represented its products were of high quality but then attempted to reformulate its products using cheaper ingredients. Further, appellees asserted that AdvoCare's products required one consumer to be hospitalized for high blood pressure, "a consumer blew his adrenals out from taking the AdvoCare Ephedra products," and "a consumer gained 85 pounds" from taking AdvoCare products. Regarding "services" obtained from AdvoCare, appellees alleged AdvoCare "sold

[them] a business" that required an extensive investment of time, effort, and money from appellees, but AdvoCare "secretly claimed the right to terminate and destroy the business at will." Appellees alleged the businesses they acquired from AdvoCare required "complex computerized books and marketing levels which AdvoCare controlled," accounting and payments by AdvoCare, business training services, and "leadership services" which, when withdrawn from appellees by AdvoCare, prevented appellees from continuing their business apart from AdvoCare.

Further, appellees alleged AdvoCare represented that appellees were purchasing a marketable business but refused to allow appellees to sell or transfer their business. Among other things, appellees made additional allegations concerning AdvoCare's misappropriation of "profit streams" developed by appellees, arbitrary termination of appellees' business "pursuant to a secret alleged right of termination at will," and denying appellees the benefits of "numerous wage laws, fair labor standard laws and overtime pay." In closing arguments, appellees' attorneys emphasized that appellees only got involved with AdvoCare because they believed AdvoCare offered them the opportunity to build a business that would "pay them for the rest of their lives." Appellees' counsel argued AdvoCare should not "take somebody's business away from them and pay zero" and emphasized the unfairness of AdvoCare's termination of appellees' distributorships. In his final remarks, counsel argued, "the reality is, that the relationship between the AdvoCare distributors and AdvoCare is an at-will relationship; they terminate you for whatever reason they want to. . . . *That is what this case is about. They believe that they can terminate these distributors for no reason, whatsoever*, and that is a fraud because nobody would get involved in one of these cases – nobody would get involved in one of these cases – nobody would become a distributor of AdvoCare if they knew they could summarily can you at any time." (Emphasis added).

–6–

Besides appellees' argument that the underlying case is about the termination of their distributorships, appellees sought as damages only the value of their lost businesses. They argue specifically in their brief that "Texas has specific rules for damages where a business is destroyed. Here, one day [appellees] owned a business producing a substantial cash flow, from commissions, overrides and bonuses, with huge customer and downline bases. The next day after termination the [appellees] had nothing." Appellees argue the testimony they offered was sufficient to establish the values of the distributorships destroyed by AdvoCare. Each appellee testified to that value: Diane Heflin testified she valued her distributorship on "a five to seven year payout." Rob De Boer worked as a financial planner for Merrill Lynch and then opened his own business; he "sold his business, so he had experience in valuing a business." Larry McDaniel ran a satellite business where he "looked for a 20-25% return." McDaniel "understood that small businessmen sought a 20% return," and he "valued his distributorship on a 5 year payout to yield a 20% rate of return." Rodney Powell "used a 7 year payout for his business, which was consistent with his experience in other businesses." Karen Ford used a "5 year cap rate to value her business."

Reviewing de novo the question of whether appellees established their right to recover as a matter of law as consumers under the DTPA, we conclude they did not. Although appellees reference products and alleged services of AdvoCare, they complain about being terminated. Critically, the sole basis for their claimed damages is the value of each distributorship as of the date AdvoCare terminated their distributorships. Neither the termination nor the lost value is tied to any alleged defective product or service. Thus, even assuming appellees could have qualified as consumers based on any goods or services acquired through their distributor relationships, those goods or services do not form the basis of their complaints and they cannot recover under the DTPA for those claims. *See Cameron*, 618 S.W.2d at 539.

Our conclusion is consistent with other courts that have considered similar transactions. Specifically, the DTPA excludes those relationships that convey wholly intangible property rights, such as distributors and sales representatives. *See, e.g., Fisher Controls Int'l, Inc. v. Gibbons*, 911 S.W.2d 135, 138 (Tex. App.—Houston [1st Dist.] 1995, writ denied). In *Fisher Controls*, the plaintiff purchased an intangible property right, the right to act as Fisher's sales representative under a "Representative Agreement." *Id.* at 139. Reversing the trial court judgment in favor of the plaintiff on his DTPA claim, the court reasoned that the purchaser of an intangible business right is usually not a "consumer" under the DTPA, unless qualifying "collateral services" are an objective of the transaction and not merely incidental to the purchase. *Id.* (citing *Texas Cookie Co. v. Hendricks & Peralta*, 747 S.W.2d 873, 876 (Tex. App.—Corpus Christi 1988, writ denied)). In other words, the goods or services acquired must form the basis of the DTPA claim and the plaintiff there failed to meet that requirement. *Fisher Controls*, 911 S.W.2d at 139 (citing *Cameron*, 618 S.W.2d at 539).

The court in *Fisher Controls* distinguished a "franchise," with typical associated collateral services as described in *Texas Cookie Co.* The court reasoned that, in contrast, the plaintiff merely contracted to be a "sales, engineering and service representative" for Fisher products in Alaska. *Id.* He did not pay a franchise fee, or any other type of fee, for this representation right. *Id.* The plaintiff was to solicit orders for Fisher products, transmit the orders to Fisher, and receive a commission when the customer paid Fisher; he could also buy Fisher products at a discount and resell them on its own behalf; and at plaintiff's expense, he could attend training sessions provided by Fisher, if he deemed it appropriate. *Id.*

Here, appellees' claims are based on the alleged unconscionability of their distributorship agreements with AdvoCare and the loss of those distributorships. The distributorship agreements

conveyed an intangible property right: the right to sell AdvoCare's products, subject to renewal of the agreements every year. *See Fisher Controls*, 911 S.W.2d at 139. There is no evidence, and the parties do not argue, that appellees purchased a "franchise" with typical associated collateral services from AdvoCare. *See id.* They paid a nominal fee, had the right to purchase AdvoCare products at a discount, and to earn income through the multi-level compensation plan based on sales volume. Further, as discussed above, while appellees may have acquired "goods and services" from AdvoCare prior to termination, it is their termination and not those goods or services acquired from AdvoCare that form the basis of appellees' DTPA claim. *See id.*; *Cameron*, 618 S.W.2d at 539.

Under the circumstances of this case, we conclude as a matter of law that appellees are not "consumers" under the DTPA. *See Sparks*, 232 S.W.3d at 864; *Fisher Controls*, 911 S.W.2d at 139. Accordingly, they are not entitled to recover as consumers under the DTPA or attorney's fees as prevailing consumers under the DTPA. *See id.* We sustain AdvoCare's first and seventh issues. Because of our disposition of AdvoCare's first and seventh issues, we need not address AdvoCare's remaining issues. Further, because we conclude appellees were not entitled to recover under the DTPA, we need not address whether Karen Ford's claims were also barred by limitations.

We reverse the trial court's judgment and render judgment that appellees take nothing on their claims.

DAVID L. BRIDGES
JUSTICE

100590F.P05

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ADVOCARE INTERNATIONAL, L.P., Appellant

No. 05-10-00590-CV        V.

KAREN FORD, SHERRY T. BRADSHAW, STEPHANIE MURPHY, RODNEY G. POWELL, JR., LARRY MCDANIEL, ROB DEBOER, HERB AND DIANE HEFLIN, AND DARRELL BROWN, Appellees

Appeal from the 298th District Court of Dallas County, Texas. (Tr.Ct.No. 06-11122-M).
Opinion delivered by Justice Bridges, Justices Richter and Murphy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that appellees Karen Ford, Sherry T. Bradshaw, Stephanie Murphy, Rodney G. Powell, Jr., Larry McDaniel, Rob Deboer, Herb and Diane Heflin, and Darrell Brown take nothing on their claims. It is **ORDERED** that appellant AdvoCare International, L.P. recover its costs of this appeal from appellees Karen Ford, Sherry T. Bradshaw, Stephanie Murphy, Rodney G. Powell, Jr., Larry McDaniel, Rob Deboer, Herb and Diane Heflin, and Darrell Brown.

Judgment entered February 5, 2013.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE