COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| PENHOLLOW CUSTOM HOMES, LLC | | No. 08-08-00029-CV |
| and STEVEN J. PENHOLLOW, | § | |
| | | Appeal from |
| Appellants, | § | |
| | | County Court at Law No. 3 |
| v. | § | |
| | | of Dallas County, Texas |
| CORNELIUS KIM and JONG KIM, | § | |
| | | (TC # 04-5247) |
| Appellees. | § | |

## **O P I N I O N**

Penhollow Custom Homes, LLC and Steven J. Penhollow appeal from a judgment entered in favor of Cornelius and Jong Kim. For the reasons that follow, we affirm in part and reverse in part.

### **FACTUAL SUMMARY**

Penhollow Custom Homes (PCH) is a custom home builder. Steven Penhollow is the owner and sole employee of PCH. He is not paid a salary by the corporation but takes an owner's draw from the profits. On May 8, 2000, the Kims entered into a contract with PCH for the construction of a new home. At the closing on December 5, 2000, PCH provided the Kims with a limited warranty and assurance that there would be no construction defects, but if there were any defects, they would be fixed at PCH's expense. The Kims moved into the home and soon began to notice problems with the construction, including a leaky roof, slow drains, incomplete interior trim, and a drainage problem in the yard. They contacted PCH regarding their complaints and a dispute arose as to which items PCH had a duty to repair. Some items were repaired but others were not.

The Kims filed suit against PCH and Penhollow seeking equitable rescission, or alternatively, damages for breach of contract, breach of warranty, and unjust enrichment. In a subsequent amendment, the Kims dismissed the equitable rescission claim. The amended petition included claims for breach of contract, violation of the Residential Construction Liability Act,[1] breach of warranty, fraud, conspiracy, alter ego, and unjust enrichment.[2] The jury determined that PCH and Penhollow breached the contract with the Kims, failed to make a timely settlement offer, and breached the warranty. It also found that Penhollow is the alter ego of PCH. The jury found against the Kims on the statutory fraud claim. The trial court entered judgment on the jury's verdict and awarded damages in the amount of $46,100, attorney's fees in the amount of $60,971.75, and prejudgment interest.

## RULE 11 AGREEMENT

In their first issue on appeal, Appellants argue that their acceptance on the record of the Kim's request to rescind the contract created a binding Rule 11 agreement which should have been enforced by the trial court. Rule 11 provides that: "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX.R.CIV.P. 11. To comply with Rule 11, the agreement must comply with general contract principles, including a valid offer and acceptance. *Two Brothers Trucking v.*

---

[1] The RCLA is found in Chapter 27 of the Texas Property Code. TEX.PROP.CODE ANN. §§ 27.001-.007 (Vernon 2000 & Vernon Supp. 2009). The RCLA modifies causes of action for damages resulting from construction defects in residences by limiting and controlling causes of action that otherwise exist. *See Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 404 (Tex.App.--Dallas 2006, no pet.). The RCLA does not create a cause of action, but provides defenses, limitations on damages, and determines the standard of causation. *Id*. at 404. The limitations on damages do not apply if the contractor fails to make a reasonable offer of settlement or repair. *See* TEX.PROP.CODE ANN. § 27.004(f) (Vernon Supp. 2009).

[2] The Kims withdrew the unjust enrichment cause of action at trial.

*Modine Manufacturing Company*, No. 13-07-00427-CV, 2009 WL 2192682 at *2 (Tex.App.--Corpus Christi, July 23, 2009, no pet.); *Alcantar v. Oklahoma National Bank*, 47 S.W.3d 815, 819 (Tex.App.--Fort Worth 2001, no pet.). The made-in-open-court exception to Rule 11 requires a statement into the record of the terms of the agreement and the agreement of the parties or their counsel to be bound by it affirmatively stated on the record. *Two Brothers Trucking*, 2009 WL 2192682 at *2, *citing Anderegg v. High Standard, Inc.*, 825 F.2d 77, 81 (5th Cir.1987).

Appellants assert that a Rule 11 agreement was entered into at a hearing on June 7, 2006 when their attorney stated on the record:

> Judge, the plaintiffs have come forth with pleadings, I guess it is, have requested an equitable decision whereby we buy back the house minus the fair rent and property. We will do that. We will request judgment right now for that, the house price of $315,000. We will buy it back for that price, plus all the property taxes that they've paid to date. Not property taxes that would be due later, but property taxes they've paid to date minus the fair market rental value of that home for the time they've been in the house. They've been in the house about 69 months now. Both sides eat their attorney's fees and costs. Fair market rental value can be determined by three appraisers. Take the average of three appraisers and use that as a loan value. Short circuits the whole trial.

The Kims' attorney expressed surprise at this offer and stated, in essence, that it was unacceptable. He informed the court that attorneys' fees were an issue and the Kims wanted to go to trial and make an election after seeing the jury's verdict. The court concluded the hearing by noting they were perhaps "getting close to being able to work out a settlement with this offer, and as you know, juries can be unpredictable."

Appellants cite no authority, and we are aware of none, for their assertion that an offer to confess judgment on one of the Kims' causes of action creates a Rule 11 agreement. We further find that the parties did not enter into a valid Rule 11 agreement because the Kims' attorney refused to accept the offer on the record. Even if it could be said there was an agreement, Appellants never

requested that the trial court enforce it. Consequently, their complaint regarding the court's failure to enforce the Rule 11 agreement is waived. TEX.R.APP.P. 33.1; *see Rammah v. Abdeljaber*, 235 S.W.3d 269, 273 (Tex.App.--Dallas 2007, no pet.)(appellant waived his claim that trial court erred in refusing to enforce Rule 11 agreement where appellant failed to move the trial court to enforce the agreement with sufficient specificity and failed to obtain a ruling). We overrule Issue One.

### ALTER EGO FINDING

In their second issue, Appellants challenge the legal sufficiency of the evidence to support the jury's finding that Penhollow is the alter ego of PCH.[3] Appellants argue that there is no evidence to prove that Penhollow used any corporate funds to purchase personal items or to pay personal debts.

In a legal sufficiency review, we credit evidence favorable to the finding if a reasonable fact-finder could, disregard contrary evidence unless a reasonable fact-finder could not, and reverse the fact-finder's determination only if the evidence presented would not enable a reasonable and fair-minded person to reach the judgment under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain the legal-sufficiency challenge if the record reveals: (1) the complete absence of evidence supporting the finding; (2) the court is barred by rules of law or of

---

[3] In their brief, Appellants purport to challenge both the legal and factual sufficiency of the evidence. They do not include the standards of review for either sufficiency challenge and their brief contains no argument specifically pertaining to the factual sufficiency issue. Further, their argument is directed at the complete absence of evidence to prove alter ego and Appellants request at the conclusion of the issue that the judgment be reversed as to Penhollow. The prayer requests only reversal of the trial court's judgment and does not request that the cause be remanded for a new trial. Under the circumstances, Appellants have waived the factual sufficiency argument by failing to brief it. *See* TEX.R.APP.P. 38.1(i); *Public, Inc. v. County of Galveston*, 264 S.W.3d 338, 341 (Tex.App.--Houston [14th Dist.] 2008, no pet.)(appellant waived factual sufficiency issue where it failed to argue evidence was factually insufficient in the "Argument" section of its brief, although brief provided the standard of review for a factual sufficiency review); *see also Varkonyi v. State*, 276 S.W.3d 27, 36 n.5 (Tex.App.--El Paso 2008, pet. ref'd)(on appeal from conviction for obscenity, court of appeals would construe defendant's brief as raising only a legal sufficiency argument; although defendant alleged that the evidence was legally and factually insufficient to prove that the material was obscene, the brief did not include an argument demonstrating how the evidence was factually insufficient, and in his prayer, defendant only requested reversal of the judgment of the trial court and a judgment of acquittal).

evidence from giving weight to the only evidence offered to support the finding; (3) the evidence offered to prove the finding is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the finding. *Id*. at 810-11. More than a scintilla of evidence exists when the evidence presented rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

A corporation is a separate legal entity from its shareholders, officers, and directors. *Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex.App.--Dallas 2007, no pet.). A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations. *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006); *Sparks*, 232 S.W.3d at 868. Under Section 21.223(a)(2) of the Texas Business Organizations Code, a shareholder may not be held liable to the corporation or its obligees with respect to any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the shareholder is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory. TEX.BUS. ORGS.CODE ANN. § 21.223(a)(2)(Vernon Pamph. 2009); *Willis*, 199 S.W.3d at 272. The liability of a shareholder for a contractual corporate obligation "is exclusive and preempts any other liability imposed for that obligation under common law or otherwise." TEX.BUS.ORGS.CODE ANN. § 21.224; *Willis*, 199 S.W.3d at 272. Subsection (b) provides that the statutory limitation on a shareholder's liability under subsection (a) does not protect the shareholder if the obligee demonstrates the shareholder caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the shareholder. TEX.BUS. ORGS.CODE ANN. § 21.223(b); *Willis*, 199 S.W.3d at 272. This proposition generally is referred to as piercing the corporate veil. *Sparks*, 232 S.W.3d at 868, *citing Castleberry v. Branscum*, 721

S.W.2d 270, 278 (Tex. 1986)(superseded in part by Tex.Bus.Orgs.Code Ann. § 21.223(a)(2)).

The alter ego doctrine is one theory used to pierce the corporate veil. *Sparks*, 232 S.W.3d at 868, *citing Castleberry*, 721 S.W.2d at 272. The theory may be applied if there is a unity between the corporation and the individual to the extent that the corporation's separateness has ceased, and holding only the corporation liable would be unjust. *Id.* As proof of alter ego, a court may consider: (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate. *Mancorp Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990); *Sparks*, 232 S.W.3d at 868; *Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 13 (Tex.App.--San Antonio 2004, pet. denied). Under Section 21.223(a)(3), the failure of a corporation to observe any corporate formality is no longer a factor in considering whether alter ego exists. Tex.Bus.Orgs.Code Ann. § 21.223(a)(3); *Sparks*, 232 S.W.3d at 868-69; *Howell v. Hilton Hotels Corp.*, 84 S.W.3d 708, 714 (Tex.App.--Houston [1st Dist.] 2002, pet. denied)(op. on reh'g). An individual's standing as an officer, director, or majority shareholder of an entity in and of itself is insufficient to support a finding of alter ego. *Sparks*, 232 S.W.3d at 869; *Carone*, 138 S.W.3d at 13; *Goldstein v. Mortenson*, 113 S.W.3d 769, 781 (Tex.App.--Austin 2003, no pet.).

In Question No. 7, the jury was asked whether Penhollow was responsible for the conduct of PCH. Consistent with the above authority, the trial court instructed the jury that Penhollow was responsible for the conduct of PCH if:

> Penhollow Custom Homes, LLC was organized and operated as a mere tool or business conduit of Steven Penhollow; there was such unity between Penhollow Custom Homes, LLC and Steven Penhollow that the separateness of Penhollow Custom Homes, LLC had ceased and holding only Penhollow Custom Homes, LLC responsible would result in injustice; and Steven Penhollow caused Penhollow

Custom Homes, LLC to be used for the purpose of perpetuating and did perpetuate an actual fraud on Plaintiffs primarily for the direct personal benefit of Steven Penhollow.

In deciding whether there was such unity between Penhollow Custom Homes, LLC and Steven Penhollow that the separateness of Penhollow Custom Homes, LLC had ceased, you are to consider the total dealings of Penhollow Custom Homes, LLC and Steven Penhollow, including:

1. the degree to which Penhollow Custom Homes, LLC's property had been kept separate from that of Steven Penhollow;

2. the amount of financial interest, ownership, and control Steven Penhollow maintained over Penhollow Custom Homes, LLC; and

3. whether Penhollow Custom Homes, LLC had been used for personal purposes of Steven Penhollow.

In their briefing, the Kims skip over significant portions of the charge. They argue that "[t]his instruction supports a finding of alter ego on the basis that (1) it would be an injustice to Appellees if Penhollow was not responsible for PCH, and, that (2) Penhollow caused PCH to be used for the purpose of perpetuating [sic] and did perpetuate [sic] an actual fraud on Appellees primarily for his direct personal benefit." But a finding of alter ego also requires evidence that PCH was organized and operated as a mere tool or business conduit of Penhollow and that there was such unity between PCH and Penhollow that the separateness of PCH had ceased. The Kims cite to the following evidence as supporting the jury's determination:

● Penhollow testified that he is the owner and sole employee of PCH.

● Penhollow also referred to himself as being a "self employed" home builder.

● Penhollow does not withhold for federal income tax or medicare tax purposes.

● Penhollow is not paid a salary by the corporation but instead takes an owner's draw from the profits.

● Penhollow draws all of the money down.

From this evidence, the jury could have inferred that Steven Penhollow, as the sole shareholder and owner of PCH, had complete control over the corporation. But mere control and ownership of all the stock of a corporation is not a sufficient basis for ignoring the corporate fiction. *Grain Dealers Mutual Insurance Company v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). The record belies the assertion in the Kims' briefing that Penhollow regularly drew down all of the profits. There is no evidence that PCH was organized and operated as a mere tool or business conduit of Penhollow. Nor is there any evidence that PCH's property had not been kept separate from Penhollow's personal property or that PCH had been used for his personal purposes. In short, we are left with the Kims reliance upon Penhollow's practice of taking an owner's draw [which would require the payment of quarterly estimates to the Internal Revenue Service] rather than a salary [which would be subject to withholding for federal income tax and medicare tax purposes]. Yet the Kims offer no authority that a shareholder who chooses an owner's draw as opposed to a salary must suffer personal liability. Indeed, a sister court has rejected such an argument. *Morris v. Powell*, 150 S.W.3d 212, 220 (Tex.App.--San Antonio 2004, no pet.)(testimony that husband and wife corporate officers took draws rather than salary on the basis of "seeing our financial circumstances, what we need money for and what our accountant tells us we should do" did not demonstrate such unity between the couple and the corporate entity that the separateness of the corporation had ceased to exist).

Here, as in *Morris*, the alter ego finding cannot stand. Accordingly, we need not address Appellants' arguments related to the sufficiency of the evidence to prove that Penhollow used PCH for the purpose of perpetrating fraud and that he perpetrated actual fraud on the Kims primarily for his direct personal benefit. We sustain Issue Two.

### ATTORNEYS' FEES

In Issue Three, Appellants challenge the attorneys' fees award on the ground that the Kims

failed to segregate the recoverable fees from the non-recoverable. A party seeking attorneys' fees must show that the fees were incurred on a claim that allows recovery of such fees, and thus is ordinarily required to segregate fees incurred on claims allowing recovery of fees from those that do not. *Stewart Title Guaranty Company v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997); *Adams v. McFadden*, 296 S.W.3d 743, 759 (Tex.App.--El Paso 2009, pet. granted, judgment vacated, and remanded by agreement). There is an exception to this rule. *Adams*, 296 S.W.3d at 759. When discrete legal services advance both recoverable claims and unrecoverable claims, attorneys are not required to segregate fees to recover the total amount covering all claims. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006); *Adams*, 296 S.W.3d at 759; *CA Partners v. Spears*, 274 S.W.3d 51, 81 (Tex.App.--Houston [14th Dist.] 2008, pet. denied). In *Tony Gullo Motors*, the Supreme Court eliminated the exception to the segregation requirement for fees incurred solely on a separate but intertwined claim. *Tony Gullo Motors*, 212 S.W.3d at 313-14. If any attorneys' fees relate solely to a claim for which such fees are unrecoverable, the claimant must segregate recoverable from unrecoverable fees. *Id*. at 313. This standard does not require attorneys to keep separate time records when drafting the breach of contract and fraud paragraphs of a petition. *See id.* at 314. The amount of recoverable attorneys' fees is sufficiently segregated if, for example, the attorney testifies that a given percentage of the drafting time would have been necessary even if the claim for which attorneys' fees are recoverable had not been asserted. *Id*. at 314; *see CA Partners*, 274 S.W.3d at 82; *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Systems, Inc.*, 245 S.W.3d 488, 509 (Tex.App.--Houston [14th Dist.] 2007, pet. denied). The need to segregate attorneys' fees is a question of law, while the extent to which claims can or cannot be segregated is a mixed question of law and fact. *Tony Gullo Motors*, 212 S.W.3d at 312-13; *CA Partners*, 274 S.W.3d at 82.

By agreement of the parties, the trial court determined the attorneys' fees issue. The Kims' attorney, Jack B. Peacock, Jr., testified that he agreed to represent the Kims on a fixed hourly basis at the initial rate of $275 per hour but he reduced the hourly rate to $250 when the case became more complicated and litigious. Peacock recognized that the case involved both claims for which attorneys' fees were recoverable and claims for which they were not. In his billing statement admitted into evidence as Plaintiff's Exhibit 42, Peacock had reduced certain areas by a percentage which represented the amount of time he worked on a non-recoverable claim only. Peacock went through Plaintiff's Exhibit 42 and pointed out each area he had so reduced. Plaintiff's Exhibit 42 showed that, at the time the Kims received the jury verdict in their favor, they had incurred attorneys' fees in the amount of $58,827.75. At the time of the hearing on attorney's fees, the Kims had paid $52,272.75. Peacock stressed that the amount reflected in Plaintiff's Exhibit 42 did not represent the total amount of attorney's fees incurred by the Kims because of the amounts deducted for non-recoverable fees. Peacock estimated that the post-trial matters would require an additional sixteen hours of time, or $4,000, so the total fees through the post-trial motions would be $62,827.75. Appellants cross-examined Peacock but did not present any controverting evidence. Counsel's testimony established that the attorney's fees are sufficiently segregated. *See Tony Gullo Motors*, 212 S.W.3d at 314; *see CA Partners*, 274 S.W.3d at 82; *7979 Airport Garage*, 245 S.W.3d at 509.

Appellants next argue that the attorneys' fee award should be reduced because the Kims did not recover all of the damages sought in their petition, and therefore, they did not substantially prevail on their breach of contract action. Section 38.001 of the Civil Practice and Remedies Code provides that a party in a breach of contract action may recover reasonable attorneys' fees. TEX.CIV.PRAC.&REM.CODE ANN. § 38.001(8)(Vernon 2008). To recover fees under Section 38.001, a party must (1) prevail on a cause of action for which fees are recoverable, and (2) recover damages.

*Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 201 (Tex. 2004). The jury found in favor of the Kims on the breach of contract action and awarded damages. The Kims are not required to "substantially" prevail on their breach of contract cause of action in order to recover attorney's fees.

Citing *Panizo v. Young Men's Christian Association of Greater Houston Area*, 938 S.W.2d 163 (Tex.App--Houston [1st Dist.] 1996, no writ), Appellants also argue that the amount of attorneys' fees should be reduced because the Kims only prevailed on the breach of contract cause of action and did not prevail on the fraud claim. In *Panizo*, the court of appeals affirmed the trial court's ruling that the plaintiff, who brought breach of contract and fraud claims against the defendant, had the duty to segregate her attorney's fees because the claims were not inextricably intertwined. *Panizo*, 938 S.W.2d at 169-70. The court also rejected the plaintiff's argument that she did not have to segregate because the fraud claim arose from the breach of contract claim. *Id.* at 170. The plaintiff relied on two cases[4] which held that, when a party proves fraud arising from a breach of contract, the party may recover attorney's fees for the fraud. *Id. Panizo* is inapplicable because it involved the separate-but-intertwined-claim test eliminated by *Tony Gullo Motors*. Under that case, the total amount of the attorney's fees covering all claims is recoverable when discrete legal services advance both recoverable claims and unrecoverable claims. *See Tony Gullo Motors*, 212 S.W.3d at 313.

Finally, Appellants argue that the Kims failed to prove that a fee agreement existed or that the fees had actually been paid. This argument is contrary to the record. Peacock expressly testified that he had a fee agreement with the Kims and they had paid a substantial portion of the fees incurred

---

[4] *Schindler v. Austwell Farmers Coop.*, 829 S.W.2d 283, 288 (Tex.App.--Corpus Christi), *aff'd as modified*, 841 S.W.2d 853 (Tex. 1992); *Gill Savings Association v. Chair King, Inc.*, 783 S.W.2d 674, 680 (Tex.App.--Houston [14th Dist.] 1989), *aff'd in part and modified in part*, 797 S.W.2d 31 (Tex. 1990).

to that point in the trial.  Issue Three is overruled.

## MITIGATION

In Issue Four, Appellants contend that the trial court erred by failing to instruct the jury on mitigation of damages.  Appellants have not cited any authority in support of this argument in their brief or reply brief nor have they provided any substantive analysis of the issue.  The Rules of Appellate Procedure require an appellant's brief to contain a clear and concise argument for the contentions made with appropriate citations to authorities and the record.  TEX.R.APP.P. 38.1(i). Failure to cite applicable authority or advance any substantive analysis waives an issue on appeal. *Torres v. GSC Enterprises, Inc.*, 242 S.W.3d 553, 559 (Tex.App.--El Paso 2007, no pet.); *Velasquez v. Waste Connections, Inc.*, 169 S.W.3d 432, 436 (Tex.App.--El Paso 2005, no pet.).  We overrule Issue Four.

## INCIDENTAL AND CONSEQUENTIAL DAMAGES AWARD

In Issue Five, Appellants raise two challenges to the jury's award of damages for the time expended by Mr. Kim in attempting to make repairs to the property.  First, they allege there is no statutory basis for the award.  Second, they argue that Mr. Kim's "fees" were not shown to be reasonable and necessary.

With respect to the first argument, the Kims respond that Appellants failed to preserve it. We agree.  Appellants did not object to the damages issue submitted by the trial court which included three types of damages:  reasonable and necessary cost to repair the property, the reasonable value of the time spent by the Kims correcting or attempting to correct the problems with the property, and reasonable and necessary engineering and consulting fees.[5]  Consequently, Appellants' complaint

---

[5]  The jury awarded $40,000 for cost to repair the property, $1,850 for the reasonable value of the time spent by the Kims attempting to repair the property, and $4,250 for engineering and consulting fees.

that the trial court submitted an improper measure of damages to the jury is waived. *See* TEX.R.CIV.P. 274 (providing that a party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection; any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections); *Equistar Chemicals, L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 868 (Tex. 2007)(argument that charge submitted improper measure of damages was waived by failure to present to trial court).

Citing *Ebby Halliday Real Estate, Inc. v. Murnan*, 916 S.W.2d 585 (Tex.App.--Fort Worth 1996, writ denied), Appellants also argue that Mr. Kim's "fees" were not shown to be reasonable and necessary. We have construed Appellants' second argument to raise a challenge to the legal sufficiency of the evidence supporting this portion of the damages award. In *Ebby Halliday*, the appellant challenged the jury's finding regarding the "reasonable and necessary" cost of past repairs incurred by the appellees. *Id.* at 588. The Fort Worth Court of Appeals noted that a claimant is not required to use the words "reasonable" and "necessary", but is only required only to present sufficient evidence to justify to justify a jury's finding that the costs were reasonable and the repairs necessary. Mr. Kim testified that as a result of the leaky roof, water came into the master bedroom and the guest bedroom. Water also leaked into the frame of a window. Mr. Kim spent three to four days attempting to find and repair the leaks. He owns an auto body repair shop and his hourly rate is $65 per hour. We conclude that the evidence is legally sufficient to support the jury's damages award in the amount of $1,850 for the reasonable value of the time spent by the Kims repairing or attempting to repair the property. Issue Five is overruled.

## ARBITRATION

In their final issue, Appellants complain that the trial court erred by failing to order the parties

to arbitration. The Kims respond that Appellants waived the issue by not obtaining a ruling from the trial court on their motion to compel arbitration. Appellants first filed a motion to compel arbitration on December 6, 2005. They filed an amended motion on December 22, 2005. Appellants allege that they raised the arbitration issue with the trial court at a docket call on January 9, 2006 and the court refused to order arbitration, but they do not provide a record citation. As a prerequisite to presenting a complaint for appellate review, the record must show that the party raised the complaint with the trial court by a timely and specific request, objection, or motion. TEX.R.APP.P. 33.1(a)(1). Further, the record must reflect that the trial court ruled on the request, objection, or motion, either expressly or implicitly, or the trial court refused to rule and the complaining party objected to the refusal. TEX.R.APP.P. 33.1(a)(2). While Appellants filed a motion to compel arbitration, the record does not show that Appellants obtained a hearing on the motion or that the trial court denied it. Consequently, the issue is waived. *See Williams Industries, Inc. v. Fry's Electronics, Inc.*, No. 01-02-00735-CV, 2003 WL 21357441 at *1-2 (Tex.App.--Houston [1 Dist.] 2003, no pet.) (holding that appellant did not preserve issue regarding court's failure to refer fraudulent transfer claim to ongoing arbitration proceeding, where record did not reflect ruling on motion to compel arbitration or court's refusal to rule). Issue Six is overruled.

Having found the evidence legally insufficient to support the alter ego finding, we reverse that portion of the judgment imposing individual liability on Penhollow and render a take-nothing judgment in his favor. We affirm the judgment against Penhollow Custom Homes, LLC.

March 24, 2010

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.