**Opinion issued August 30, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00331-CV

————————————

## LAWRENCE E. YOUNG AND JUDITH A. YOUNG, Appellants

## V.

## DIMENSION HOMES, INC., Appellee

On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Case No. 12-DCV-197202

## MEMORANDUM OPINION

Appellants, Lawrence E. Young and Judith A. Young, appeal the judgment following a jury trial rendered in favor of appellee, Dimension Homes, Inc., in Dimension's suit for breach of contract and quantum meruit. In six issues, the Youngs contend that: (1) the trial court erred in awarding Dimension damages on its

quantum meruit claim; (2) there is legally and factually insufficient evidence to support the jury's finding of $146,000 in quantum meruit damages; (3) the Youngs are entitled to a new trial because of procedural errors including (a) an untimely pleading of that claim in the alternative and (b) a finding by the jury that is inconsistent with the quantum meruit issue; (4) the trial court erred in awarding Dimension the unpaid retainage as breach of contract damages because Dimension failed to get a jury finding that the Youngs breached the contract; (5) there is legally and factually insufficient evidence supporting the jury's findings that (a) Dimension's failure to execute and deliver an Affidavit of Completion to the Youngs was excused, and (b) Dimension's failure to obtain written Change Orders was excused; and (6) the trial court abused its discretion in awarding $260,417.70 in attorney's fees, plus over $140,000 in contingent appellate fees.

We affirm the breach of contract award, reverse the quantum meruit award, and remand for further proceedings with respect to the award of attorney's fees.

**Background**

The Youngs hired Dimension, a custom home builder, to build their new home in Fort Bend County. The construction contract, executed by the parties on January 15, 2007 (the Contract), obligated Dimension to "furnish all labor, services, equipment, materials, and all other facilities (the Work) for the construction of certain improvements, generally described as a private residence, Plan 9767 (the

2

Improvements)" on the Youngs' property. In exchange, the Youngs agreed to pay Dimension for the cost of the Work, defined by the Contract, plus fifteen-percent of the cost of the Work.

The parties initially agreed to an overall budget amount of approximately $1,812,000. The Contract, however, expressly stated that Dimension did not "represent these budgets to be the actual cost," and that the Youngs "acknowledge[d] and agree[d] that any overage in the budgets is the sole responsibility of the [Youngs]." The parties also agreed on a "Construction Loan Budget for building the plan with the defined specifications [which] contains detail[ed] budgets itemizing the necessary labor, material, permits, approvals, assessments, insurance, and all other costs associated with the construction of the Improvements," which was attached to the contract. The Construction Loan Budget included two line items allocating $20,000 to pay for any "construction extras."

The parties also included a "Change Order" provision in the Contract which required the parties to execute a Change Order for any "changes or alteration[s] to the Work" that were requested by the Youngs and approved by Dimension, and stated that any such Change Order would serve as an amendment to the Contract.

Construction on the Youngs' home began in February 2007. Dimension's president, Jeff Dzuik, testified that although there was a working draft of the plans and specifications when the Contract was executed, there was no final agreed set of

3

plans and specifications, and, in fact, many items were still left open for decision. According to Dzuik, the plans and specifications grew while the home was under construction as the Youngs made changes and added upgrades and extras. Among other things, the square footage of the house was increased, low voltage was substantially increased, the Youngs' choice of brick was upgraded, additional HVAC added, driveway gates and openers were added, entrance columns added, countertops and appliances were upgraded, additional stone work was added and windows were upgraded. Despite the Change Order provision, the Youngs never asked Dzuik for a Change Order covering any of the modifications. Dzuik testified that he advised the Youngs of the cost impacts of their decisions and that he "did exactly what Larry Young asked [him] to do."

Larry Young, on the other hand, testified that the Contract capped the total cost of the home at approximately $1,812,000 and that he understood that any additional costs incurred as a result of their design choices would be offset by savings elsewhere in the budget. Young testified that he learned that the original budget had been exceeded for the first time in February 2008. According to Young, he and Dzuik met that month to discuss the blown budget and, at the meeting, Young agreed to pay an additional $254,355.18, which covered the additional cost incurred up to that point, for a total of cost of $2,079,223.14 (the February Amendment).

4

Dzuik disagreed with Young's interpretation of that meeting and testified that he would never have represented that the $2,079,223.14 was the total cost of the home because the home was still under construction in February 2008 and additional specifications were still being added. According to Dzuik, the Youngs made changes to the project after the parties' February Amendment. Among other things, substantial upgrades to the interior woodwork were added, additional concrete work (flatwork) was added, upgrades to the driveway were made, additional fencing was added, the pool was expanded, additional landscaping was added, wood floors upstairs were added, and lighting fixtures were upgraded. Dzuik testified these changes caused several categories included in the original budget to be exceeded.

The Youngs closed on the home in April 2008. At the closing, Dzuik and the Youngs executed an "Owner's and Contractor's Affidavit" in which they averred that:

> 'all of the persons, firms, and corporations . . . including the General Contractor and all sub-contractors, who have furnished services, labor, or materials, according to the plans and specifications, or extra items, used in the construction or repair of such improvements, have been paid in full, that there are no mechanics' or materialmen's liens against said property . . . and that such construction or repair has been fully completed and accepted by the Owner. General Contractor hereby waives and releases his right to file a mechanics' or materialmen's lien against the property. . . ."

It is undisputed that the Youngs paid Dimension $1,963,036.84 and that they have not paid Dimension the remaining five percent retainage of $103,317.71. Larry

Young and his counsel testified that they would have paid Dimension the retainage, if Dzuik had provided them with the documentation they were requesting. The record also includes various correspondence between the Youngs or their counsel and Dzuik in which the Youngs offered to pay Dimension if Dzuik provided a final all-bills paid affidavit and provided them with lien releases from all of the subcontractors who had worked on the Youngs' home. At trial, the Youngs' counsel "stipulate[d] that if [Dimension] g[a]ve [the Youngs] an affidavit of the completion executed by [Dimension], [the Youngs] will pay the $103,000-plus retainage."

The Youngs' position at trial was that the February Amendment fixed the final amount that they were obligated to pay under the Contract at $2,066,354.57. Dimension argued that the amendment did not cap the Youngs' liability under the Contract, but that if it did, Dimension was entitled to recover in quantum meruit for the additional extras and upgrades that were added after the February Amendment.

The jury found that the Youngs agreed to pay no more than $2,066,354.57 for the construction of the home (Question 1). Dimension's failure to execute and deliver an Affidavit of Completion to the Youngs and obtain written Change Orders, was excused because the Youngs waived compliance with those contractual provisions (Questions 4 and 6). The jury also found that Dimension did compensable work for the Youngs in excess of $2,066,354.57 (Question 7) and they determined that "the reasonable value of such compensable work in excess of $2,066,354.57 at

the time and place it was performed" was $146,000 (Question 8).[1] Attorney's fees were submitted to the trial court by agreement and findings of fact and conclusions of law were entered.

On February 10, 2014, the trial court entered judgment based on these findings, awarding Dimension $103,317.71 in contract damages for the unpaid retainage, $146,000 in quantum meruit damages, and $260,417.70 in attorney's fees, plus $140,000 in contingent appellate fees.

**Standard of Review and Applicable Law**

**A.    Contract Interpretation**

In construing a written contract, the primary concern is to ascertain and give effect to the parties' intentions as expressed in the document. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005). We begin our analysis with the contract's express language. *Italian Cowboy*, 341 S.W.3d at 333. Contract terms will be given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). If, after applying the pertinent contract construction rules, the contract can be given a certain

---

[1]    The jury also made additional findings on Dimension's fraud and negligent misrepresentation claims that are not being challenged on appeal.

or definite legal meaning or interpretation, then it is not ambiguous, and we will construe the contract as a matter of law. *Frost Nat'l Bank*, 165 S.W.3d at 312.

## Quantum Meruit

In their first, second, and third issues, the Youngs challenge the trial court's award of $146,000 in quantum meruit damages to Dimension. Specifically, the Youngs contend that (1) Dimension does not have a claim for quantum meruit because the materials and services it provided were covered by Contract; (2) there is legally and factually insufficient evidence to support the jury's finding of $146,000 in quantum meruit damages; and (3) the Youngs are entitled to a new trial because of procedural errors associated with the quantum meruit claim.

A party generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005); *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 69 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988)). Whether an express contract covers the services at issue is a legal question for the court. *Gulf Liquids New River Project*, 356 S.W.3d at 70. "When the evidence shows that no contract covers the service at issue, *then* the question of whether a party may recover in quantum meruit is for the trier of fact." *Id.* (emphasis in original) (citation omitted).

The Contract expressly obligates Dimension to "furnish all labor, services, equipment, materials, and all other facilities" for the construction of the Youngs' new home. The parties also attached an agreed Construction Loan Budget which contained detailed budgets itemizing the costs associated with the construction project, including the necessary labor and materials. The budget also contained two line items covering $20,000 in "construction extras." The Youngs "acknowledge[d] and agree[d] that any overages in the budgets [were their] sole responsibility."

At trial, Dzuik testified that the Youngs made changes to the project after the parties February Amendment that resulted in "overages" with respect to the original budgets for several categories included in the Construction Loan Budget, including the inside door and trim, flatwork, the driveway, fencing, HVAC trim, the pool, landscaping/sprinkler/sod, wood floors, and lighting fixtures. Dzuik also testified that Larry Young added some other minor items.[2]

After reviewing the Contract, we conclude that the Contract expressly covers the categories of items set forth in the detailed Construction Loan Budget attached to the Contract. *See Frost Nat'l Bank*, 165 S.W.3d at 312 (stating that interpretation of unambiguous contract is question of law for court). To the extent that the actual cost of providing one of these items exceeds the amount indicated by the

---

[2] Such items included leaf guards for the gutters ($1,100) and log kits for the gas fireplaces ($2,500). Dzuik testified that the log kits were not included in the original budget.

9

Construction Loan Budget, the Youngs are solely responsible for that overage, based on the plain language of paragraph 4 of the contract—"Owner acknowledges and agrees that any overages in the budgets is the sole responsibility of the Owner." *See id.* Thus, any "overages" testified to by Dzuik are covered by the Contract. The minor items requested by the Youngs during construction are also covered by the $20,000 budgeted to cover any "construction extras." Because the items and overages are covered by the Contract, the trial court erred in awarding Dimension damages based on quantum meruit. *See In re Kellogg Brown & Root*, 166 S.W.3d at 740; *Gulf Liquids New River Project*, 356 S.W.3d at 69.

We sustain the Youngs' first issue and reverse the award of $146,000 in quantum meruit damages to Dimension.[3]

### Breach of Contract

In their fourth and fifth issues, the Youngs argue that the trial court erred by awarding Dimension damages on its breach of contract claim because: (1) Dimension failed to get a jury finding that the Youngs breached the contract; (2) the undisputed evidence demonstrates that Dimension failed to provide the Affidavit of Completion and the lien-releases which are conditions precedent to obtaining payment of the contractual retainage; (3) there is legally insufficient evidence to

---

[3]    As a result of our disposition of this issue, we need not address the Youngs' second and third issues.

support the jury's findings that Dimension's failure to provide them with an Affidavit of Completion (Question 4) and obtain Change Orders (Question 5) were excused because the Youngs waived these requirements; and (4) Dimension's failure to provide them with an Affidavit of Completion and obtain Change Orders constitute prior material breaches of the contract.

## A. Applicable Law

The elements of a breach-of-contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages as a result of breach. *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

"Whether a party has breached a contract is a question of law for the court, not a question of fact for the jury, when the facts of the parties' conduct are undisputed or conclusively established." *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) (citing *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex. 1971)). "The judge determines what conduct is required of the parties and, insofar as a dispute exists concerning the failure of a party to perform the contract, the judge submits the disputed fact questions to the jury." *Lafarge Corp. v. Wolff Inc.*, 977 S.W.2d 181, 186 (Tex. App.—Austin 1998, pet. denied) (citing *ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 253 n.3 (Tex. App.—Dallas 1990, no writ)).

## B.    Dimension's Failure to Obtain a Jury Finding

The Youngs argue that Dimension did not meet its burden of proof with respect to its breach of contract claim because Dimension failed to get a jury finding that the Youngs breached the contract.

At trial, Dimension argued that the Youngs breached the Contract by: (1) failing to pay for all of the extras and upgrades that were added to the Contract after February 2008, and (2) failing to pay the $103,317.71 retainage (five percent of $2,066,354.57). Dimension also argued that if the post-February 2008 items were not covered by the Contract, then those costs were recoverable under quantum meruit. Dimension submitted jury questions on the issue of whether the Youngs' failure to pay for all of the extras and upgrades that were added after February 2008 breached the Contract (Questions 1 and 2).  Because the jury found that the Youngs only agreed to pay $2,066,354.57 for the construction of the home, the jury did not answer Question 2. The jury's responses to these questions, however, are not dispositive of the issue of whether Dimension needed to get a jury finding that the Youngs breached the contract by failing to pay the retainage. *See Hous. Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 696 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (stating that appellate courts must interpret jury findings in manner that supports judgment).

12

It is undisputed that the Youngs agreed to pay Dimension a minimum of $2,066,354.57 under the Contract and that this sum included the $103,317.71 contractual retainage. Both parties agreed that the Youngs never paid Dimension the $103,317.71 retainage. Since this fact was established without dispute, Dimension was not required to submit a jury question on the issue. *See City of Keller v. Wilson*, 168 S.W.3d 802, 814–15 (Tex. 2005) ("[U]ncontroverted issues need not be submitted to a jury at all.").

However, the Youngs' failure to pay the retainage would not constitute a breach of the contract if the obligation never accrued because Dimension failed to satisfy two conditions precedent to payment—Dimension's obligations to provide the Youngs with lien-releases and an executed Affidavit of Completion—or if Dimension committed a prior breach when it failed to comply with the Change Order provision.

Because Dimension asserted in its pleading that all conditions precedent were satisfied, the Youngs were required to specifically deny each condition precedent. *See* TEX. R. CIV. P. 54. The Youngs failed to do so. Further, evidence regarding whether Dimension satisfied its obligations to provide the Youngs with lien-releases and an Affidavit of Completion was admitted without objection and therefore these issues were tried by consent. *See Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 533 & n.61 (Tex. App.—Fort Worth 2011, pet. denied) (holding that even if

certain requirement was condition precedent that was not specifically denied, it was tried by consent).

Dimension argued that, even if the Affidavit of Completion requirement was a condition precedent, its failure to provide the Affidavit of Completion, and its failure to comply with the Change Order provision, were excused by the Youngs' waiver of these requirements. Questions about these potential contract breaches were submitted to the jury and the jury found they were excused (Questions 4 and 5).

The payment of the retainage was required by the Contract on completion of the project. The fact of nonpayment was established by agreement between the parties. The Youngs' argument that payment was not due because of a failure of condition precedent was negated by a jury finding that Dimension's failure to provide the Youngs with an Affidavit of Completion was excused. Likewise, the Youngs' argument that payment was not due because of a prior material breach was negated by the jury's finding that Dimension's failure to obtain Change Orders was excused. As discussed below, the jury's findings on these issues are supported by sufficient evidence. As further discussed, neither the Contract nor the Property Code required Dimension to provide the Youngs with lien releases from all of the subcontractors, and the affidavit that Dimension gave to the Youngs at closing satisfies the Probate Code's Final Bills-Paid Affidavit requirement. Thus, the failure to pay the retainage is established by the record as a breach of contract.

14

## C.  Delivery of Lien Releases

The Youngs argue that the evidence conclusively establishes that Dimension did not provide them with lien releases from all of the subcontractors, as required by the Contract and under Property Code section 53.259.

The Contract does not require Dimension to provide lien releases from all of the various subcontractors in order to receive the retainage. Paragraph 14 of the contract specifically grants Dimension a mechanic's and materialman's lien on the property in order to secure the Youngs' payment of the Contract. The only liens referred to by the Contract are the liens granted to Dimension by paragraph 14. Thus, paragraph 8(c)'s reference to Dimension's contractual obligation to "deliver[] lien releases to [the Youngs] in form and substance as may be reasonably required by [the Youngs]," refers to *Dimension's* liens on the property. *See Frost Nat'l Bank*, 165 S.W.3d at 312 (stating that interpretation of unambiguous contract is question of law for court).

The Youngs further contend that Dimension was required to provide them with lien releases from all of the subcontractors as a condition precedent to payment of the retainage pursuant to Property Code section 53.259. *See* TEX. PROP. CODE ANN. § 53.259 (West 2014). Property Code section 53.259, which is entitled "Final Bills-Paid Affidavit Required," provides:

> As a condition of final payment under a residential construction contract, the original contractor shall, at the time the final payment is

tendered, execute and deliver to the owner, or the owner's agent, an affidavit stating that the original contractor has paid each person in full for all labor and materials used in the construction of improvements on the real property. If the original contractor has not paid each person in full, the original contractor shall state in the affidavit the amount owed and the name and, if known, the address and telephone number of each person to whom a payment is owed.

TEX. PROP. CODE ANN. § 53.259(a). Contrary to the Youngs' position, section 53.259 does not require Dimension to provide the Youngs with any lien releases; the plain language of the statute only requires Dimension to provide them with an affidavit stating that all of the subcontractors have been paid in full. *See id.*; *see also Valdez v. Hollenbeck*, 465 S.W.3d 217, 227 (Tex. 2015) (stating courts construe statutes in accordance with plain meaning of statutory text).

In this case, the evidence conclusively demonstrates that Dzuik, acting in his capacity as president of Dimension, signed an "Owner's and Contractor's Affidavit" on April 8, 2008 in which he averred that "all sub-contractors . . . have been paid in full, [and] that there are no mechanics' or materialmen's liens against [the Youngs'] property . . . ." The evidence also conclusively demonstrates that Dimension released its mechanic's and materialman's liens on the property in April 2008, as evidenced by that same affidavit executed at closing. Neither section 53.259 nor the Contract requires a final all-bills paid affidavit to be in a particular form or a form approved by the owner. Section 53.259 only requires that Dimension provide the Youngs with an "affidavit stating that the original contractor has paid each person in full for all

16

labor and materials used in the construction of improvements on the real property." We conclude that the April 2008 affidavit executed by Dzuik on behalf of Dimension satisfies this statutory obligation.

**D.  Sufficiency of Evidence Supporting Jury Findings on Waiver**

**1.  Standard of Review and Applicable Law**

When addressing a challenge to the legal sufficiency of the evidence to support the jury's findings, we review the entire record, credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See City of Keller*, 168 S.W.3d at 822, 827. We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates: (1) a complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). Evidence does not exceed a scintilla if jurors "would have to guess whether a vital fact exists." *City of Keller*, 168 S.W.3d at 813.

The jury is the sole judge of the weight and credibility of the evidence, and is entitled to resolve any conflicts in the evidence and to choose which testimony to believe. *See id.* at 819. We therefore assume that jurors decided questions of credibility or conflicting evidence in favor of the verdict if they reasonably could do so. *Id.* at 820. We do not substitute our judgment for that of the jurors if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

Waiver is primarily a function of intent and requires either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 391, 393–94 (Tex. 2014) (citations omitted). To establish waiver, a party must prove that the other party had (1) an existing right, benefit, or advantage, (2) actual or constructive knowledge of its existence, and (3) an actual intent to relinquish the right. *ASI Techs., Inc. v. Johnson Equip. Co.*, 75 S.W.3d 545, 548 (Tex. App.—San Antonio 2002, pet. denied). To find waiver through conduct, such intent "must be clearly demonstrated by the surrounding facts and circumstances." *Crosstex Energy Servs.*, 430 S.W.3d at 393–94 (quoting *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003)). For example, an implied waiver may be established by showing a party's prolonged silence or inaction in asserting a known right. *See Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d 108, 111 (Tex. 1999).

## 2. Affidavit of Completion

The Youngs further argue that the evidence conclusively establishes that Dimension did not provide them with an Affidavit of Completion, as required by paragraph 8(c) of the Contract and there is legally insufficient evidence to support the jury's finding that Dimension's failure to comply with this contractual obligation was excused because the Youngs waived this requirement (Question 4). Dimension acknowledges that it did not provide the Youngs with an Affidavit of Completion, but argues that the jury's finding that its failure to provide the affidavit was excused by the Youngs' waiver of that right is supported by sufficient evidence.

Although "Affidavit of Completion" is not defined in the Contract, it has a technical meaning under the Property Code. Property Code section 53.106, which is entitled "Affidavit of Completion," states that the owner of a given property may file an affidavit of completion with the county clerk of the county in which the property is located and that any such affidavit must contain, among other things, "a conspicuous statement that a claimant may not have a lien on retained funds unless the claimant files an affidavit claiming a lien not later than the 40th day after the date the work under the original contract is completed." TEX. PROP. CODE ANN. § 53.106(a)(6) (West 2014).

The Youngs argue that the record not only discloses no clear intent by them to waive their right to obtain an affidavit of completion, but it also reflects that they

insisted on the affidavit of completion and the appropriate lien releases, as demonstrated by e-mail correspondence with Dzuik that was admitted into evidence as defendants' exhibits 29 and 35, and plaintiff's exhibit 172. Dziuk, however, testified that, prior to the lawsuit being filed, no one from the Youngs' side asked him for an affidavit of completion.

Defendants' exhibit 29 is a September 2008 e-mail from the Youngs' attorney to Dzuik asking Dzuik to provide lien releases from several subcontractors. The Youngs' attorney also attached a copy of the "Final Bills-Paid Affidavit, Pursuant to Texas Property Code § 53.259" and instructed Dzuik to sign and notarize the affidavit and "hand deliver the original to Larry when he gives you his check tomorrow." Defendants' exhibit 35 is a March 2, 2009 e-mail from the Youngs' attorney to Dzuik, attaching another copy of the same proposed affidavit, and stating: "If you could sign and email or fax the affidavit to me, I'll call the bank and let them know to have the check ready for you." Plaintiff's exhibit 172 is a March 15, 2011 e-mail from Larry Young to Dzuik attaching a copy of the same proposed affidavit and stating, "This is what [my attorney] suggested you sign when I pay you." We have not found—and the Youngs have not directed us to—any correspondence in which the Youngs or their counsel requested an "Affidavit of Completion" prior to the filing of the lawsuit in 2012.

These three exhibits never mention an Affidavit of Completion and do not demonstrate that the Youngs insisted that Dimension provide an Affidavit of Completion before they would pay the $103,000 retainage. On the contrary, these exhibits indicate that the Youngs were willing to pay Dimension the retainage if Dzuik signed the "Final Bills-Paid Affidavit, Pursuant to Texas Property Code § 53.259" and provided the lien releases they were requesting. Although it can serve some of the same purposes, an "Affidavit of Completion" as described by section 53.106(a), is not a final-bills-paid affidavit as required by section 53.259, or a lien release. *Compare* TEX. PROP. CODE ANN. § 53.106(a) *with* TEX. PROP. CODE ANN. § 53.259. Moreover, the Youngs' attorney testified that he never requested an Affidavit of Completion from Dimension. He also testified that the Youngs were willing to waive the Affidavit of Completion requirement in September 2008 if they received the lien releases they were requesting.

Based on this evidence and the record as whole, we conclude that there is more than a scintilla of evidence demonstrating that although the Youngs knew about the Affidavit of Completion requirement in September 2008, they did not request an Affidavit of Completion from Dimension until after the lawsuit was filed in 2012. Accordingly, we hold that there is legally sufficient evidence supporting the jury's finding that the Youngs waived the Affidavit of Completion requirement in response to Question 4. *See El Paso Indep. Auto. Dealers*, 1 S.W.3d at 111 (stating

21

that implied waiver may be established by showing party's prolonged silence or inaction in asserting known right).

### 3. Change Orders

The Youngs argue that the evidence conclusively establishes that Dimension breached the Contract by failing to provide them with written change orders, as required by paragraph 5 of the Contract, Dimension's breach constitutes a prior material breach of the Contract which relieved the Youngs of any further performance, and that there is legally insufficient evidence to support the jury's finding that Dimension's breach was excused because the Youngs waived this requirement (Question 5).

Paragraph 5 states: "Change Orders. If Owner desires changes or alteration to the Work, and subject to the approval of the requested change or alteration by Contractor, a Change Order shall be completed for same, and executed by both Owner and Contractor as an Amendment to this Contract."

Unless excused, a prior material breach of the contract by one party relieves the other contracting party of any further performance. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004); *see also Tex. Standard Oil & Gas, L.P. v. Frankel Offshore Energy, Inc.*, 394 S.W.3d 753, 779–80 (Tex. App.— Houston [14th Dist.] 2012, no pet.) (affirming take-nothing judgment based in part on jury finding that party's material breach was excused).

The Contract containing the Change Order provision was executed on January 15, 2007. There is evidence that the Youngs made a series of changes to the work being performed under the Contract after that date and no Change Order was ever completed. In fact, Larry Young testified that he "never told [Dzuik] he needed a change order," and that on some occasions Young himself assumed "that a change order wasn't necessary." Similarly, Dzuik testified that no one asked him to provide a Change Order while the house was under construction and that no one suggested that he should have prepared Change Orders until after the lawsuit was filed in March 2012.

Based on this evidence and the record as a whole, we conclude that there is more than a scintilla of evidence supporting the jury's finding that the Youngs waived compliance with the Change Order provision because they knew about the provision and did not insist on compliance until years after the project was completed. *See El Paso Indep. Auto. Dealers*, 1 S.W.3d at 111 (stating implied waiver may be established by showing party's prolonged silence or inaction in asserting known right). Accordingly, we hold that there is legally sufficient evidence supporting the jury's answer to Question 5.[4]

---

[4]    In light of our disposition, we need not address whether the Change Order is a condition precedent, as opposed to a covenant.

23

**E. Conclusion**

We overrule the Youngs' fourth and fifth issues.

**Attorney's Fees**

In their sixth issue, the Youngs argue that the trial court abused its discretion in awarding $260,417.70 in attorney's fees, plus over $140,000 in contingent appellate fees, to Dimension because no viable legal theory supports the award, Dimension did not offer any proof of segregation, and the amount of fees awarded was unreasonable, excessive, and disproportionate to the damages recovered.

We review a trial court's award of attorney's fees under an abuse of discretion standard. *See Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004). A party may not recover attorney's fees unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006).

The Youngs argue that no viable legal theory supports the award of attorney's fees to Dimension. Texas Civil Practice and Remedies Code section 38.001(8) provides for the recovery of attorney's fees in a suit on a contract. To recover attorney's fees under section 38.001, a party must prevail on the underlying claim and recover damages. *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). Under section 38.001, the trial court has no discretion to deny attorney's fees when presented with evidence of the same. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (noting that statutes providing that party

24

"may recover" attorney's fees are not discretionary). If trial attorney's fees are mandatory under section 38.001, then appellate attorney's fees are also mandatory when proof of reasonable fees is presented. *See Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex. 1990) (remanding for retrial on appellate attorney's fees under section 38.001 when there was some evidence to support award). Because Dimension pleaded for attorney's fees based on Chapter 38, prevailed on its breach of contract claim for the retainage, and recovered damages for that claim, Dimension is entitled to recover some amount of attorney's fees under Chapter 38. *See KB Home*, 295 S.W.3d at 653; *Bocquet*, 972 S.W.2d at 20.

The Youngs argue that that attorney's fee award must be reversed because Dimension did not offer any proof that it segregated its fees. Where, as here, a party seeks attorney's fees in a case where some claims permit the recovery of fees and others do not, the party must segregate and exclude the fees for services related to the claims for which fees are not recoverable unless the "discrete legal services advance[d] both [the] recoverable claim and the unrecoverable claim." *Tony Gullo*, 212 S.W.3d at 13–14. When a party does not segregate attorney's fees between recoverable and unrecoverable claims in the court below and we determine segregation is required, the fee award must be reversed and the case must be remanded to the trial court to determine which fees are recoverable. *See id.* at 314. It is not necessary for an attorney to keep separate records documenting the exact

25

amount of time spent pursuing one claim versus another to prove that the amount of attorney's fees sought is sufficiently segregated. *See id*. Rather, an attorney can satisfy his evidentiary burden by presenting evidence of unsegregated attorney's fees and a rough percentage of the amount attributable to the claims for which fees are not recoverable. *See id.* at 314 & n.83. Although the need to segregate fees is a question of law, the extent to which certain claims can be segregated is a mixed question of law and fact. *Penhollow Custom Homes, L.L.C. v. Kim*, 320 S.W.3d 366, 374 (Tex. App.—El Paso 2010, no pet.).

At the bench trial on attorney's fees, Dimension's expert offered uncontradicted testimony that he reviewed the time sheets for Dimension's attorneys and found no discrete entries attributable to Dimension's tort claims for fraud and negligent misrepresentation. Dimension's expert also testified that he had determined that 95% of the time spent in this case would have been necessary even if there had been no tort claims. The expert did not, however, attempt to segregate the fees attributable to Dimension's breach of contract claim from its quantum meriut claim. Although Dimension originally prevailed on its quantum meriut claim, we have since reversed that portion of the trial court's judgment, and, as such, Dimension is no longer entitled to attorney's fees on that claim. Because Dimension's evidence of fees expended is some evidence of what the segregated amount should be for its breach of contract claim, we will remand the issue to the

trial court for further consideration of the correct amount. *See Tex. Ear Nose &*
*Throat Consultants, PLLC v. Jones*, 470 S.W.3d 67, 91 (Tex. App.—Houston [14th
Dist.] 2015, no pet.) (reversing award of attorney's fees where party failed to present
evidence of segregation or intertwining, and remanding for new assessment of
amount of fees).

## Conclusion

We affirm the breach of contract award, reverse the quantum meriut award,
and remand for further proceedings with respect to the award of attorney's fees.

Russell Lloyd
Justice

Panel consists of Justices Keyes, Massengale, and Lloyd.